**UNITED STATES of America,
Appellee,**

v.

**Francis CROWLEY, Defendant–
Appellant.**

**Docket No. 02–1381.**

United States Court of Appeals,
Second Circuit.

Argued: Sept. 18, 2002.
Decided: Jan. 31, 2003.

Debra D. Newman, Assistant United States Attorney, Eastern District of New York (Alan Vinegrad, United States Attorney; David C. James, Assistant United States Attorney, of counsel), Brooklyn, New York, for Appellee.

Edward M. Shaw, New York, New York, for Defendant–Appellant.

Before: CABRANES and STRAUB, Circuit Judges, and LYNCH, District Judge.*

LYNCH, District Judge.

Francis Crowley appeals from his conviction, following a jury trial, of attempted aggravated sexual abuse, in violation of 18 U.S.C. § 2241(a)(1), and his resulting sentence to imprisonment for nine years, three years of supervised release, $13,253.97 in restitution payments, and the mandatory $100 "special assessment." Though Crowley raises a number of serious issues, none of his arguments warrants reversal of his conviction or sentence, which are affirmed.

## FACTS

The criminal charges against Crowley and a co-defendant, Steven Valjato, who was acquitted, arose from an incident at

---

* The Honorable Gerard E. Lynch, of the United States District Court for the Southern District of New York, sitting by designation.

the Kings Point Merchant Marine Academy in the early morning hours of September 28, 1997. It is undisputed that on that night, Crowley and Valjato, students at the Academy, entered the room of a fellow midshipman, Stephanie Vincent, and tried to persuade her to engage in sexual acts with them. While the details of what occurred were sharply disputed at trial, Vincent's testimony, which the jury was fully entitled to credit, supplemented and corroborated in certain respects by the testimony of her roommate and of a friend of Crowley who testified to certain arguable admissions by Crowley, would have permitted the jury to find the following facts.

On Saturday evening, September 27, 1997, Vincent, a twenty-year-old junior at the academy, and her roommate, Jennifer Bechtel, attended a "keg party" at the Academy. Crowley also attended the party, and he and Bechtel at some point smoked some marijuana. Vincent and Bechtel returned to their dormitory room before midnight and went to sleep.

Around 5:00 Sunday morning, Vincent awoke to hear the room door open. Crowley entered the room, climbed up on Vincent's desk, and approached her bed, which was raised five or six feet off the floor, supported by the desk and a chest of drawers. Crowley began calling, "Jen," and Vincent replied that Bechtel was in the other bed. Vincent left the room to use a bathroom, and Crowley crossed the room to approach Bechtel's bedside. Upon Vincent's return, she heard Crowley unsuccessfully urging Bechtel to go "party" with him and to smoke some crack. At Crowley's urging, Vincent went out into the hallway to talk to Crowley and Valjato, who were sitting in the hallway. They urged her to "party" with them, displaying what appeared to be marijuana, but Vincent rejected the offer and returned to bed.

Shortly thereafter, Crowley reentered the room and again climbed up to Vincent's bedside. After telling her that Valjato was angry about Vincent's rejection of their overtures, and that Valjato wanted to perform oral sex on her, Crowley tried to climb into Vincent's bed. A physical struggle ensued, in which Crowley pinned Vincent to the bed with his upper torso while fondling her breasts. Vincent resisted physically and repeatedly demanded that Crowley stop and leave, but Crowley persisted, telling her that he and Valjato wanted to engage in oral sex with her, urging her to agree, and touching her breasts. During this struggle, Crowley moved one of his hands inside the waistband of Vincent's shorts, pushed her up against the wall by the side of her bed while continuing to press her down with his body, gripped her genitals, and attempted to penetrate her vagina with his finger.

At about this point, Valjato also entered the room, climbed onto the desk, and added his entreaties, encouraging Vincent to "come on let us do this." Tr. at 85. Although Valjato could not get into the bed, his large body blocked any effort by Vincent to get away from Crowley, who continued to pin her to the bed while trying to pull down her shorts. When Vincent continued to resist, Valjato eventually punched the bedframe, saying, "[S]he's not going to ... do it, let's ... go." *Id.* at 90. Valjato then threatened Vincent never to tell anyone what had happened, "or it would be all over for [her]." *Id.* at 91. Crowley asked Vincent if she would charge him with sexual harassment, and she said that if he left the room everything would be fine.

Valjato and Crowley climbed down from the bed and left, but Crowley immediately reentered the room, and once again urged Vincent to agree to have oral sex, again

saying that Valjato was angry at her refusal. When Vincent again refused, Crowley finally left. About an hour and twenty minutes had elapsed since Crowley's first entry. Vincent reported the incident later that day.

### PROCEDURAL HISTORY

The prosecution of Crowley and Valjato took some unusual turns. Crowley was originally charged in Nassau County Court with two counts of first-degree sexual abuse, a felony punishable by a maximum of seven years' imprisonment. *See* N.Y. Penal Law §§ 130.65, 70.00 (McKinney 2002). On the eve of trial, the state court dismissed the charges on Crowley's motion, concluding that the federal government had exclusive jurisdiction over the Academy grounds.

Crowley and Valjato were then indicted by a federal grand jury in the Eastern District of New York and charged in four counts: one count each of attempted aggravated sexual abuse in violation of 18 U.S.C. § 2241(a)(1) and attempted sexual abuse in violation of 18 U.S.C. § 2242(1), and two counts of abusive sexual contact in violation of 18 U.S.C. § 2244(a). These similar-sounding and potentially overlapping offenses have distinct elements. Section 2241(a)(1), the most relevant for purposes of this opinion, prohibits causing or attempting to cause another person to commit a sexual act (specifically defined in 18 U.S.C. § 2246(2) as including, as to adults, essentially only genital, oral, anal or digital intercourse) "by using force against that other person." Section 2242(1) prohibits causing or attempting to cause another person to commit one of the defined sexual acts by the use of threats (short of threats of death, serious injury, or kidnaping, which are included in a different subsection of the more serious § 2241(a)). Finally, § 2244 prohibits (as

relevant here). the use of force or threats to accomplish "sexual contact," defined by § 2246(3) more broadly than the limited "sexual acts" that are the subject of §§ 2241 and 2242.

At a jury trial in 1999 before the Honorable Joanna Seybert, both Crowley and Valjato were convicted of the two more serious aggravated sexual abuse charges, and acquitted on the two sexual contact counts. After the trial, however, Judge Seybert granted defense motions (1) for a new trial, on the ground that the court had erred by refusing to instruct the jury on the defense of voluntary intoxication, and (2) for dismissal of the indictment, on the ground that the indictment was defective in failing to specify the particular sexual act the defendants were accused of attempting. *United States v. Crowley*, 79 F.Supp.2d 138 (E.D.N.Y.1999).

On the government's appeal, this Court reversed the dismissal of the indictment, holding that the defendants had waived any objection to the indictment's lack of specificity by failing to raise the issue before trial, but affirmed the grant of a new trial, holding that the jury indeed should have been instructed on voluntary intoxication. *United States v. Crowley*, 236 F.3d 104, 106 (2d Cir.2000).

On remand, the case was first assigned to the Honorable Thomas C. Platt, Jr., who ruled on various pre-trial motions, and then to the Honorable Jacob Mishler, who presided over the trial. Following a five-day jury trial, the jury acquitted Valjato of both remaining charges, and acquitted Crowley of the lesser charge of attempted sexual abuse, but convicted Crowley again of the most serious charge of attempted aggravated sexual abuse under 18 U.S.C. § 2241(a)(1). After the trial, due to Judge Mishler's illness, the case was again reassigned, and on June 20, 2002, the Honor-

able Leonard Wexler sentenced Crowley, primarily to imprisonment for nine years.

This appeal followed.

### DISCUSSION

Crowley raises five objections to his conviction and sentence. He argues (1) that the evidence was insufficient to support the jury's verdict; (2) that the District Court erred in instructing the jury on the definition of attempt; (3) that the court erroneously refused to permit him to cross-examine Vincent on certain matters, principally concerning alleged prior instances of false accusations of various sorts against other midshipmen; (4) that the indictment should have been dismissed for lack of specificity; and (5) that the District Court erred by not departing downward from the sentencing range prescribed by the sentencing guidelines. None of these arguments justifies reversal of the judgment below.

I. *Sufficiency of the Evidence*

■ Crowley argues that the evidence was insufficient to establish that he intended to accomplish a sexual act by force. Appellant's Br. at 19–29. In challenging the sufficiency of the evidence, the defendant faces "an uphill battle," *United States v. Jones*, 30 F.3d 276, 281 (2d Cir.1994), and "bears a very heavy burden," *United States v. Rivera*, 971 F.2d 876, 890 (2d Cir.1992) (internal quotation marks and citations omitted), because the evidence must be viewed in the light most favorable to the Government, with all reasonable inferences drawn in favor of the verdict, *United States v. Amato*, 15 F.3d 230, 235 (2d Cir.1994). The question for this Court is "not whether [it] believes that the evidence at trial established guilt beyond a reasonable doubt," *United States v. Brown*, 937 F.2d 32, 35 (2d Cir.1991), but whether "*any* rational trier of fact could

have found the essential elements of the crime beyond a reasonable doubt," *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) (emphasis in original).

In support of this claim, Crowley points out that the evidence is uncontradicted that he was much stronger than the victim, that he repeatedly asked Vincent to allow him and Valjato to engage in sexual acts with her, and that he eventually voluntarily abandoned his endeavor and left the room. In effect, he claims that the evidence conclusively demonstrates that he never intended to complete a sexual act by force, because if he had really wanted to, he would have been able to accomplish his goal. The argument is misconceived.

■ Under § 2241(a)(1), it is a crime to attempt to "cause[ ] another person to engage in a sexual act by using force against that other person." 18 U.S.C. § 2241(a)(1) (2000). A "sexual act," within the meaning of this statute, includes "the penetration, however slight, of the ... genital opening of another by a ... finger ..., with an intent to ... arouse or gratify the sexual desire of any person." *Id.* § 2246(2)(C). To establish an intent to commit an offense, the government must prove beyond a reasonable doubt that the defendant "(1) had the intent to commit the crime, and (2) engaged in conduct amounting to a 'substantial step' towards the commission of the crime." *United States v. Rosa*, 11 F.3d 315, 337 (2d Cir.1993) (quoting *United States v. Martinez*, 775 F.2d 31, 35 (2d Cir.1985)) (internal quotation marks omitted). Putting these various legal rules together in the context of this case, it would suffice for conviction of the offense charged in this case for the government to prove that Crowley (1) intended to accomplish digital penetration of Vincent's genitals by force, with the purpose of sexually arousing either himself or Vincent, and (2)

actually did take a substantial step toward accomplishing that goal.

## A. *Substantial Step*

■ Taking the issues in reverse order, assuming it was proved that Crowley intended to forcibly penetrate Vincent, there is no question whatsoever that he engaged in a substantial step toward completing that crime. The substantial step standard, which has been adopted by this Court as the test for the wrongful act element of federal attempt crimes, *United States v. Stallworth*, 543 F.2d 1038, 1040–41 (2d Cir. 1976), derives from the American Law Institute's Model Penal Code, where it represented the code drafters' "proposed solution of the problem of framing criteria to determine when the actor has progressed sufficiently toward his criminal objective to have committed an attempt." Model Penal Code § 5.01 cmt. 6, at 329 (1985). The problem faced by the drafters was that to punish as an attempt every act done to further a criminal purpose, no matter how remote from accomplishing harm, risks punishing individuals for their thoughts alone, before they have committed any act that is dangerous or harmful; yet, if the law punished only the very last act necessary to accomplish the criminal result, legal intervention would be delayed to a point at which it may well be too late to prevent harm. The Model Penal Code test "was designed to widen the ambit of attempt liability" beyond the confusing and conflicting tests developed by common law courts, which generally set the dividing line between criminal attempts and mere preparatory conduct at the point where an actor came dangerously close to the completion of the crime. *United States v. Ivic*, 700 F.2d 51, 66 (2d Cir.1983) (Friendly, J.), *overruled on other grounds, National Org. for Women, Inc. v. Scheidler*, 510 U.S. 249, 114 S.Ct. 798, 127 L.Ed.2d 99 (1994). As this Court has defined it, "[a] substantial step must be something more than mere preparation, yet may be less than the last act necessary before the actual commission of the substantive crime." *United States v. Manley*, 632 F.2d 978, 987 (2d Cir.1980).

■ Determining whether particular conduct constitutes a substantial step is "so dependent on the particular factual context of each case that, of necessity, there can be no litmus test to guide the reviewing courts." *Id.* at 988. In this case, however, there can be no doubt that Crowley's acts, as described by Vincent, went far beyond any preparatory step, and sufficed to satisfy virtually any definition of the actus reus (wrongful act) of attempt. The jury was entitled to find that Crowley physically pinned Vincent to the bed and/or against the wall, pushed his hand inside her shorts, and put his hand on her vagina with a "groping, gripping type of action." Tr. at 79. Indeed, Vincent expressly testified that Crowley "tried" but was not able to insert his finger, because she was resisting. *Id.* It is difficult to understand what further act Crowley could have performed toward the goal of forced penetration, short of actual completion of the crime. The evidence was thus sufficient to establish that Crowley's actions met and exceeded what is necessary to constitute a substantial step toward the completion of a forcible sexual act as defined in the statute.

## B. *Intent*

■ With respect to the mens rea (wrongful state of mind) element, Crowley presents a closer question for the finder of fact, but no more difficult an issue for us. To satisfy the mental element of attempt, the government must prove that the defendant intended to engage in conduct constituting a crime—in this case, that Crowley intended to commit a sexual act by force.

Crowley argues that his words as reported by Vincent sought (even begged or pleaded for) her permission to engage in sexual acts, and that, had he truly intended to compel her submission, he would have persisted with physical force which, he contends, would ultimately have succeeded. These are arguments that a jury could reasonably consider in assessing whether Crowley really intended to go through with a sexual act (as defined in the statute) against Vincent's will, or whether he planned to desist short of such acts if she continued to deny him permission to go further.

▪ But the question of Crowley's intention is primarily one of inference from his actions, and thus one especially suited for resolution by a trial jury. *See Cheek v. United States*, 498 U.S. 192, 203, 111 S.Ct. 604, 112 L.Ed.2d 617 (1991); *United States v. Brandt*, 196 F.2d 653, 657 (2d Cir.1952). The state of a person's mind is rarely susceptible to proof by direct evidence, and usually must be inferred from evidence of his or her acts, but it is no less a question of fact for that. *See United States v. Chestnut*, 533 F.2d 40, 48 (2d Cir.1976). Here, Vincent testified that Crowley placed his hand on her vagina and tried to insert his finger, but was prevented by her physical resistance. All of the sexual contact that Crowley did accomplish—fondling Vincent's breasts, pushing his hand inside her pants, and grabbing her genitals—was committed, according to the victim's testimony, over her express verbal objection and against her physical resistance, by means of physical force. The jury could legitimately reject Crowley's claim that he would inevitably have

succeeded if he really intended to use force, given that the awkward space in which the struggle was going on—an elevated bunk to which Crowley only had access by climbing on a desk—surely helped to neutralize any advantage in physical strength he might have had, and thus facilitated Vincent's determined resistance. Crowley's intention was a genuine issue of fact for the jury to resolve, and it resolved the question against him. The evidence was sufficient to justify its conclusion.

Our assessment of this issue is bolstered by precedent. In *United States v. Hourihan*, 66 F.3d 458, 461 (2d Cir.1995), this Court affirmed a conviction for aggravated sexual abuse in violation of § 2241(a)(1) based on attempted forced fellatio, where the defendant, over his victim's objections, forcibly kissed her and rubbed her breasts, then attempted to physically force her to a kneeling position in proximity to his exposed penis, but desisted from his efforts in order to answer a telephone call. Contrary to Crowley's arguments, we see no meaningful distinction between this case and *Hourihan*. Crowley, like Hourihan, used physical force not only to make sexual contact with his victim over her objections, but also to force himself into position to accomplish a sexual act. Hourihan came no closer to accomplishing his goal of oral-genital intercourse than Crowley did to accomplishing his of digital penetration. And Hourihan, like Crowley, argued "that he obviously did not attempt to force [his victim] into a sexual act because, if he had wanted to force her, he could have, given his size and strength as compared to hers." *Id.* at 462.[1] Yet this Court gave short

1. We fail to see how the fact that Crowley gave up his efforts after a physical struggle in which he was unable to overcome Vincent's resistance, while Hourihan was distracted by a phone call, distinguishes the cases. In each

case, the jury could have found that the defendant used physical force to come very close to completing a sexual act as defined in the statute, over the physical and verbal objections of the victim, and stopped before com-

shrift to his claim of insufficiency, holding that the jury could easily have found, on these facts, both that Hourihan had the necessary intent to compel a sexual act by force, and that he had taken a sufficiently substantial step toward accomplishing that goal. *Id.* The same result follows here.[2]

■ One further word is appropriate. Crowley's argument that a jury could reasonably find that he voluntarily left the room without persisting further in the use of force suggests a claim not that he never intended to compel a sexual act, but rather that he at some point renounced the crime and abandoned that intent. American courts have historically divided over whether renunciation or abandonment of an attempt, after the defendant's actions have progressed far enough to establish liability, can ever constitute a defense. *See* Model Penal Code § 5.01 cmt. 8, at 356–58 & nn. 271–272 (1985) (collecting cases). The Model Penal Code's definition of attempt includes an affirmative defense of voluntary renunciation, which applies

only when the actor "abandon[s] his effort to commit the crime or otherwise prevented its commission, under circumstances manifesting a complete and voluntary renunciation of his criminal purpose," with the further stipulation that renunciation is not "complete and voluntary" if it is motivated by the unanticipated difficulty of accomplishing the objective, or by a desire to avoid detection or to defer the attempt to a different crime or another victim. *Id.* § 5.01(4). "Most recently revised codes and proposals adopt a renunciation defense substantially similar to the Model Code's." *Id.* cmt. 8, at 360 & n. 279 (collecting statutes).[3]

This Court has never directly addressed whether such a defense is included within the concept of "attempt" incorporated by Congress without definition into many criminal statutes, though it has frequently cited the Model Penal Code's analysis as persuasive in other respects, including in adopting the substantial step test itself.

---

pleting the crime under circumstances where the jury could reasonably have found that the defendant feared detection if he persisted further.

2. *United States v. Lauck*, 905 F.2d 15 (2d Cir.1990), on which Crowley heavily relies, is of limited relevance. As Crowley points out, in that case Judge Mishler, sitting as finder of fact, acquitted the defendant of attempting to force a sexual act in violation of § 2241(a)(1) where the victim testified that the defendant accosted her in a corridor, told her that he "wanted to make love to [her]," put his arm on her, backed her into a corner and began to forcibly kiss her and fondle her breasts. *Id.* at 16. The victim was able to break away when her falling earrings made a noise that startled the defendant. *Id.* at 16–17. That the fact finder in that case found that guilt had not been proved beyond a reasonable doubt of course has no precedential consequence. Moreover, Lauck came much less close to accomplishing a prohibited sexual act than did Crowley, leaving more room for doubt about his intention to do so by force.

Finally, as the government points out, this Court's affirmance of Lauck's conviction under § 2244(a) for forcible sexual contact supports the government's position, by establishing that the element of "force," which is the same under both statutes, can be established by force that is used, as Crowley used his physical strength here, to restrain the victim. *Id.* at 17–18.

3. The defense is somewhat anomalous; ordinarily, once a person has committed acts sufficient to establish criminal liability, his repentance or desistance from further crimes cannot absolve him from guilt. The proposed renunciation defense was closely linked to the MPC's adoption of the "substantial step" test for triggering attempt liability. The Code proposed expanding the definition of attempt, permitting a defendant under some circumstances to be found guilty of attempt for taking preliminary steps toward committing a crime, but allowing acquittal where the defendant can persuade the fact finder that he had indeed taken such a step, but then had a change of heart and abandoned his efforts.

*See, e.g., Ivic,* 700 F.2d at 66; *United States v. Jackson,* 560 F.2d 112, 118–21 (2d Cir.1977); *Stallworth,* 543 F.2d at 1040. The only other circuits that have formally addressed the question have rejected the defense as a matter of federal law. *See United States v. Shelton,* 30 F.3d 702, 706 (6th Cir.1994); *United States v. Bussey,* 507 F.2d 1096, 1098 (9th Cir.1974).

But it is unnecessary to decide the question here. Crowley neither sought a jury instruction on this subject in the district court nor raised the argument here, and at oral argument he expressly disavowed reliance on any renunciation defense. Moreover, the facts here are hardly compelling ones on which to advance such a legal argument. Crowley came very near to completing his goal, and as the American Law Institute notes, much of the argument supporting a renunciation defense "may prove unsatisfactory when the actor has proceeded far toward the commission of the contemplated crime." Model Penal Code § 5.01 cmt. 8, at 359 (1985). Even if the Model Penal Code's renunciation provision applied, the jury might well have concluded that Crowley's attempt was defeated not by a change of heart, but by Vincent's successful resistance and by Crowley's fears that further efforts as the

day began to break would lead to detection. Under these circumstances, Crowley's failure even to raise the issue suggests a reasonable strategic choice that the defense was better off arguing that Crowley never had a criminal intent, rather than making the argument—novel in federal law, and perhaps lacking in jury appeal—that he began with a criminal purpose but abandoned it.

■ In short, the evidence in this case was more than sufficient to permit a reasonable jury to find both the physical and mental elements of aggravated sexual assault by means of attempted forcible digital penetration.[4]

## II. *Jury Instructions*

Crowley also argues that the jury was improperly instructed concerning the definition of attempt. Appellant's Br. at 29–38. Judge Mishler's instructions correctly stated, at least twice, that in order to find Crowley guilty of an attempt, the jury would have to find that he had an intent to engage in criminal conduct, and that he took a substantial step toward the commission of the substantive offense. The essence of Crowley's claim is that Judge Mishler committed error by failing further

4. Because the evidence was sufficient to permit a guilty verdict on a theory of attempted digital penetration, there is no need to consider whether the evidence would also have permitted conviction on a theory of attempted forcible oral-genital contact as defined in 18 U.S.C. § 2246(2)(B). This Court noted in *United States v. Delano* that:

> *Griffin v. United States,* 502 U.S. 46, 112 S.Ct. 466, 116 L.Ed.2d 371 (1991), instructs that when divergent theories of criminal liability are submitted to the jury and the jury renders a general guilty verdict, on a challenge to the sufficiency of the evidence, if the evidence amply supports one of the theories presented the verdict must be affirmed. *See id.* at 56–59, 112 S.Ct. 466; *see also United States v. Garcia,* 992 F.2d 409,

415–16 (2d Cir.1993). Because juries are well equipped to weigh and analyze the evidence adduced at trial, they can be trusted to distinguish factually supported theories of the crime from those that are inadequate. *See Griffin,* 502 U.S. at 59–60, 112 S.Ct. 466 ("It is one thing to negate a verdict that, while supported by evidence, may have been based on an erroneous view of the law; it is another to do so merely on the chance—remote, it seems to us—that the jury convicted on a ground that was not supported by adequate evidence when there existed alternative grounds for which the evidence was sufficient.") (internal quotation marks omitted).

55 F.3d 720, 730–31 (2d Cir.1995).

to define the meaning of "substantial step" by advising the jury that an action is a substantial step only if it "strongly corroborate[s] his criminal intent." *Id.* at 29.

## A. *Waiver*

■ The government attempts to block this argument at the outset by arguing that Crowley failed to preserve it by proper objection to the district court's proposed charge. Crowley argues that he made the same argument in the district court that he makes here, both submitting his proposed instruction in writing and renewing his request at the charge conference.

Rule 30 of the Federal Rules of Criminal Procedure permits parties to "file written requests that the court instruct the jury on the law as set forth in the requests" and also provides that "[n]o party may assign as error any portion of the charge or omission therefrom unless that party objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which that party objects and the grounds of the objection." As the government correctly points out, the Supreme Court has held that "a request for an instruction before the jury retires" does not preserve "an objection to the instruction actually given by the court." *Jones v. United States,* 527 U.S. 373, 388, 119 S.Ct. 2090, 144 L.Ed.2d 370 (1999). Similarly, this Court has repeatedly held that "[a] party who has requested an instruction that has not been given is not relieved of the requirement that he state distinctly his objection to the instruction that is given," *United States v. Friedman,* 854 F.2d 535, 556 (2d Cir.1988) (internal quotation marks omitted), noting that "[t]he separate references in Rule 30 to charge requests and to objections clearly indicate that a charge request does not relieve a party of the obligation to make a specific objection," and that "a requested

charge is not a 'distinct' objection to a charge adopted by the district court," *id.* at 555. *See United States v. Wong,* 40 F.3d 1347, 1373 (2d Cir.1994); *United States v. Locascio,* 6 F.3d 924, 942 (2d Cir.1993); *United States v. Tannenbaum,* 934 F.2d 8, 14 (2d Cir.1991).

This rule may appear harsh or counterintuitive to lawyers who believe that a requested charge should adequately alert a trial judge to a party's substantive legal position. The distinction between requests to charge and specific objections at a charging conference is significant, however. Requests to charge, often submitted in advance of trial or in its very early stages, assist the court in preparing a draft of jury instructions, and in understanding the legal issues that might come up during a trial. But events and positions often change during a trial, and language that may have appeared desirable (or not) to the judge early in the trial, when the judge may have limited understanding of the evidence to be presented or the parties' contentions, or that may have seemed important or desirable to the parties before the evidence has crystallized and the arguments are ripe for presentation to the jury, may come to appear in a very different light by the end of the trial. Thus, when reviewing requests to charge pre-trial, a judge may conclude that particular language is not very important, but she might be persuaded to change her opinion if the proponent of the language reiterates the request by means of a focused objection to the judge's proposed charge when the instructions are being finalized. Similarly, even if a party took a particular position in requests to charge submitted pre-trial, so many events at trial could lead the party to change its position that a judge may reasonably treat such requests as abandoned if the party does not press the point by means of a focused

objection to the judge's proposed charge at the proper time.

■■■ Accordingly, the mere fact that a defendant submitted his proposed language as part of a requested charge does not in itself preserve the point for appeal. To determine whether Crowley waived or preserved his argument, we must turn to the charging conference, of which the parties present rather different accounts. The government argues that Crowley did not merely forfeit his claim by failing to register a specific objection (which would leave open the possibility of review for plain error), but waived it entirely, while Crowley contends that he raised a sufficiently specific objection to preserve the point.

The discussion at the charging conference was brief. Judge Mishler opened the proceedings by reading the defendants' proposed charge on attempt. That charge began by stating, in exactly the language that would ultimately be read to the jury, that the elements of attempt are "one, an intent to engage in criminal conduct, and [two], the performance of acts constituting a substantial step toward the commission of the substantive offense." Tr. at 752.

The request went on, however, to modify the words "substantial step" by adding the description, "which strongly corroborates the actor's criminal intent." *Id.* The proposed instruction then added two more paragraphs further defining or describing the meaning of "substantial step."[5]

The government then objected to the proposed instruction to the extent that it went beyond simply stating the requirement of a substantial step, and Judge Mishler agreed, noting that this Court in *Manley* had adopted the Model Penal Code standard, "that the requisite elements of attempt are an intent to engage in criminal conduct and the performance of acts which constitute a substantial step toward the commission [of the substantive offense]." *Id.* at 754 (quoting *Manley*, 632 F.2d at 987). Valjato's lawyer then stated, "That's where I quoted, Judge.... That's what my letter quoted, those exact words from the Second Circuit opinion." *Id.* This comment appeared to refer to the language just quoted by the judge, which the judge had in effect agreed to read to the jury, though portions of the remainder of the proposed charge, which the judge declined to give, also closely paraphrase language from *Manley*.[6]

5. The entirety of Crowley's requested charge is as follows:

> The requisite elements of attempt are, one, an intent to engage in criminal conduct; and [two], the performance of acts constituting a substantial step toward the commission of the substantive offense which strongly corroborates the actor's criminal intent.
> A substantial step goes beyond mere preparation, but may be less than the last necessary act before the actual commission of the substantive crime. The purpose of the substantial step requirement is to corroborate the actor's specific intent to commit the crime. The act must be of such unequivocal or explicit nature that it's calculated to bring the desired result to fruition and fulfillment.

> In order for behavior to be punishable as [attempt], it may not be compatible with innocence but yet must be necessary for the completion of the crime and be of such nature that a reasonable observer viewing it in the circumstances of this case could conclude beyond a reasonable doubt that it was undertaken in accordance with a design to violate the statute.
> Tr. at 752–53.

6. After the language quoted by Judge Mishler, the *Manley* Court went on to state the following:

> A substantial step must be something more than mere preparation, yet may be less than the last act necessary before the actual commission of the substantive crime, and thus the finder of fact may give weight to

Judge Mishler proceeded to distinguish between language in appellate opinions that discusses the law and language that ought to be included in jury instructions: "But there's a difference between the Second Circuit [in] a discussion of the elements and instructing the district court to charge in the words of the Second Circuit." *Id.* The judge stated his view that in the *Manley* case this Court was not "intending to instruct the district court," and he "refuse[d] to charge as proposed." *Id.* at 754–55. Instead, he reiterated his intention to state the two elements of attempt, intent and substantial step, in essentially the words stated by this Court in *Manley* and proposed by the defendants. Judge Mishler then specifically asked, "Any objections to that?" Valjato's lawyer said, "We'll take that, Judge," and Crowley's counsel was silent. *Id.* at 755.

This dialogue illustrates why Rule 30 requires more than a request to charge. Judge Mishler apparently discarded the defendants' proposed explanatory language not because he felt it misstated the law, but because he thought the language was unnecessary and not required by this Court's decisions. He gave the defendants every opportunity to object, but rather than explaining why the additional verbiage was important to them, or even baldly stating that they objected to the failure to give it, the only defendant to respond simply accepted the judge's proposal. On this record, no district judge could be expected to understand that Crowley believed, as he now professes to do, that the charge the court intended to give was

"egregiously incorrect." Appellant's Br. at 29.

The government, like Crowley, misreads the significance of the exchange discussed above. While Crowley clearly failed to object to the omission of his proposed further elaboration on the meaning of "substantial step," thus forfeiting that issue on appeal, it cannot fairly be said that he invited the charge or affirmatively waived his position. The defense did seek the language Crowley now claims was essential; Crowley neither approved nor objected to the judge's proposal; and even Valjato's comment can best be read as acquiescence in the judge's ruling rather than approval or invitation of it. There is thus no basis to find that Crowley "intentional[ly] relinquish[ed] ... a known right," foreclosing limited review of the charge for plain error affecting substantial rights. *See United States v. Olano,* 507 U.S. 725, 734, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993).

Accordingly, since Crowley failed to comply with Rule 30 by objecting to the omission of his proposed language, "stating distinctly the matter to which [he] object[ed] and the grounds of the objection," Fed.R.Crim.P. 30, the Court may review the charge only for plain error.

### B. *Plain Error*

 Despite Crowley's somewhat overheated argument, the instructions given by the district court cannot be characterized as plain error. For an error to be

---

that which has already been done as well as that which remains to be accomplished before commission of the substantive crime. *United States v. Jackson,* supra, 560 F.2d at 118–19. In order for behavior to be punishable as an attempt, it need not be incompatible with innocence, yet it must be necessary to the consummation of the crime and be of such a nature that a reasonable

observer, viewing it in context could conclude beyond a reasonable doubt that it was undertaken in accordance with a design to violate the statute.
632 F.2d at 987–88. These sentences are closely paraphrased in the first sentences of each of the second and third paragraphs of the defendant's proposed instructions. *See* note 4 above.

a "plain error[ ] or [a] defect[ ] affecting substantial rights," Fed.R.Crim.P. 52(b), it must be a "clear" or "obvious" deviation from current law that "affected the outcome of the district court proceedings." *Olano*, 507 U.S. at 734, 113 S.Ct. 1770. Even when an error is plain and affects substantial rights, a reviewing court should only exercise its remedial discretion under Rule 52(b) if the error "seriously affect[s] the fairness, integrity or public reputation of [the] judicial proceedings." *Id.* at 736, 113 S.Ct. 1770 (internal quotation marks and citations omitted).

In the first place, nothing actually stated in the charge was erroneous at all. The court succinctly and correctly defined the elements of aggravated sexual abuse, correctly noting that the offense includes both knowingly causing a person to engage in a sexual act (which the court later correctly defined for the jury) by force, and attempting to do so. The court then further defined attempt, as set forth above, correctly describing its elements.

Nor is it by any means "obvious" that the failure to gloss the meaning of "substantial step," let alone the failure to use the particular words now demanded by Crowley, constitutes error. As Crowley correctly points out, this Court has frequently cited the language of the Model Penal Code, which suggests that a substantial step is one that is "strongly corroborative of the actor's criminal purpose." Model Penal Code § 5.01(2). *See Sui v. INS*, 250 F.3d 105, 115 (2d Cir.2001); *Ivic*, 700 F.2d at 66; *Jackson*, 560 F.2d at 118–19; *Stallworth*, 543 F.2d at 1040. A district court certainly could not be faulted for using this language to define "substantial step" for a jury.

But this Court has never remotely suggested that it is mandatory for a trial court to use this language in instructing a jury, or indeed that a trial court is required to go beyond the perfectly understandable English word "substantial" itself. The Model Penal Code itself does not use the "strongly corroborative" language as a *definition* of "substantial," or suggest that this language should be quoted to juries, but rather uses the phrase in instructing courts as to what kinds of acts may be "held" to be sufficient to constitute substantial steps. Model Penal Code § 5.01(2). That language is part of a section of the Code that enumerates specific acts which, if they meet the "strongly corroborative" test, "shall not be held insufficient as a matter of law" to constitute an attempt. *Id.* As Judge Friendly expressly noted, this entire section "was intended for use by the judge not in charging the jury but in deciding whether to send a case to it." *Ivic*, 700 F.2d at 68.

Judge Friendly also recognized that the "strongly corroborative" language is not the easiest language for juries to grasp: while finding it difficult to improve upon that formulation "as a conceptual matter," he pointed out that "this is not language easy of application by a jury or even by an appellate court." *Id.* at 66. Judge Sand's recommended instruction, "The acts of a person who intends to commit a crime will constitute an attempt where the acts themselves clearly indicate an intent to willfully commit a crime," seems to state the same concept in easier language. *See* Hon. Leonard B. Sand et al., *Modern Federal Jury Instructions*, Inst. 10–1, at 10–3 (2002); *see also* Pattern Criminal Jury Instruction, § 5.01, Sixth Circuit (1991) (stating that defendant's conduct "must strongly confirm" intent to commit the crime). Moreover, while the "substantial step" formula is now the prevailing standard in American law, the penal laws of many states that have adopted it have omitted the following section, which contains the "strongly corroborative" language. Model Penal Code

§ 5.01 cmt. 3, at 320 n. 95 (1985). Those jurisdictions appear to have believed that the phrase "substantial step" required no further elaboration.

It is thus difficult to conclude that the language now demanded by Crowley is essential to conveying the meaning of "substantial step" to a jury. At any rate, there is no basis for concluding that the omission of any particular definition of "substantial" was so obviously erroneous that the district court should have recognized it as error even in the absence of proper objection by the defense.

Finally, Crowley can make no showing that he was prejudiced by the omission of the definition from the charge, still less that the alleged error "seriously affect[s] the fairness, integrity or public reputation of judicial proceedings." *Olano*, 507 U.S. at 736, 113 S.Ct. 1770 (quoting *United States v. Atkinson*, 297 U.S. 157, 160, 56 S.Ct. 391, 80 L.Ed. 555 (1936)). The purpose of the substantial step requirement is to distinguish between merely preparatory acts and those that progress so far as to be justly punished as wicked and dangerous attempts to complete the crime. On this record, there was little ambiguity about whether Crowley's acts constituted a substantial step toward accomplishing forcible digital penetration. As discussed above, his acts progressed to within a literal inch of completion. Whatever doubt a jury might have been prepared to entertain about Crowley's true purpose, there can be no doubt that the acts he committed "strongly corroborate" the government's charge that he intended to accomplish a sexual act by force. There is no reasonable likelihood that the jury would have been more likely to find Crowley not guilty if the judge had glossed the "substantial step" requirement with the definition proposed by the defense.

There was thus no error, much less plain error requiring reversal, in the jury instructions.

### III. *Cross–Examination*

Crowley next argues that the district court erred by unduly restricting his efforts to cross-examine Vincent. He asserts that he should have been permitted to explore two areas in cross-examination before the jury: allegations that Vincent had made false accusations of various kinds against other students, and questions about a battery of psychological tests to which she was subjected by the Academy. Appellant's Br. at 38–51. The District Court's rulings on both subjects were within its broad discretion to control cross-examination.

#### A. *Alleged False Accusations*

■ Vincent's credibility was obviously a critical issue at trial, and the defense duly attacked it, not only by cross-examination but also by offering testimony from Shannon Pender, who had attended the Academy at the same time as Vincent. Pender testified that she knew and disliked Vincent, that before the incident at issue in this case she had discussed Vincent's reputation with a number of male and female fellow students, as well as with officers who were commanders and administrators of the Academy, and that Vincent had a reputation for untruthfulness. She also testified that Vincent had made various other "accusations" against fellow-midshipmen that had been "proven" false. Tr. at 723–37.

The defense had attempted to cross-examine Vincent with respect to the claim that she had made such false accusations, but the trial court did not permit questioning before the jury on this subject. Rather, the court permitted defense counsel to conduct a voir dire examination of Vincent

outside the jury's presence. During that examination, defense counsel were allowed to direct Vincent's attention to certain named students or certain particular incidents, and to ask Vincent whether she had ever "lie[d] about what happened" in those instances or "falsely accuse[d]" the students involved. Tr. at 159–68. In each case, Vincent denied lying or making false accusations. Counsel were generally not permitted, however, to ask questions that explored in any detail what Vincent had told the authorities in these cases or what the results of any official inquiry had been. After hearing this testimony, Judge Mishler declined to permit cross-examination on this subject before the jury. Crowley attacks this decision as "clearly wrong," Appellant's Br. at 49, and argues that the restriction on cross-examination denied him his right to confront his accuser, guaranteed by the Sixth Amendment.

Fed.R.Evid. 608(b) prohibits a party from presenting "extrinsic evidence" of "[s]pecific instances of the conduct of a witness, for the purpose of attacking or supporting the witness' credibility," unless that conduct was the subject of a criminal conviction. The rule, however, permits the witness to be examined about such specific conduct, "in the discretion of the court, if probative of truthfulness or untruthfulness." Fed.R.Evid. 608(b). Similarly, Fed.R.Evid. 404(b) allows the admission of testimony regarding prior bad acts of a witness, so long as such evidence is not offered "in order to show action in conformity therewith." [7]

▮ As this Court has repeatedly emphasized, however, " '[T]rial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable

limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant.' *Delaware v. Van Arsdall,* 475 U.S. 673, 679, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986). Only when this broad discretion is abused will we reverse a trial court's decision to restrict cross-examination. *United States v. Maldonado–Rivera,* 922 F.2d 934, 956 (2d Cir.1990)." *United States v. Rahman,* 189 F.3d 88, 132 (2d Cir.1999); *see also United States v. Flaharty,* 295 F.3d 182, 190–91 (2d Cir.2002); *United States v. Griffith,* 284 F.3d 338, 351–52 (2d Cir. 2002). "Further, under Rule 403, the district court may exclude even relevant evidence if it finds that the 'probative value [of the testimony] is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.' Fed.R.Evid. 403." *Flaharty,* 295 F.3d at 191.

Unlike the questions about prior violent crimes, which this Court held were properly precluded in *Flaharty, id.,* the questions defendants proposed to ask, which related to alleged instances of false accusation, were certainly relevant to the witness's credibility. And defense counsel represented, and later demonstrated via Pender's testimony, that they had a good faith basis for their proposed questioning. Nevertheless, although we might have taken a different course in the position of the trial judge, we cannot hold that Judge Mishler abused his discretion in proceeding as he did. The voir dire examination established that Vincent would deny making false ac-

---

**7.** Crowley argued to the District Court that evidence that Vincent had previously made allegations against midshipmen should be admitted to show motive, on the theory that

Vincent may have attempted to frame the defendants in retaliation for the Academy's failure to pursue her prior allegations.

cusations or lying in connection with Academy investigations of other students. Since the defense would be precluded by Rule 608(b) from attempting to refute Vincent's testimony by offering extrinsic evidence concerning the incidents in question, the only evidence before the jury on the subject would have been Vincent's denial of falsehood. *See United States v. Perrone*, 936 F.2d 1403, 1412 (2d Cir.1991); *see also* 4 Jack B. Weinstein & Margaret A. Berger, *Weinstein's Federal Evidence,* § 608.22[1], at 608–46 to 608–48 (2d ed.2002).

Allowing cross-examination before the jury would thus have produced little of probative value. Certainly, the trial court was well within its discretion in not allowing any broader inquiry into the nature of what Vincent had told the authorities and what the results of their investigations (to the extent Vincent even knew of them) had been. Such broad-ranging inquiry would at best have produced confusing and distracting sideshows regarding the facts of controversies completely unrelated to the charges against Crowley at trial, and was properly precluded. It was thus also within the trial judge's broad discretion in regulating cross-examination to conclude that since the most that would be permitted was questioning about whether Vincent had lied, to which the defendants would get negative answers, the prejudicial im-

pact of engendering speculation about the subject outweighed the minimal probative value of permitting the jury to evaluate Vincent's demeanor during the question and answer.

We are further bolstered in this view by the fact that Judge Mishler, like Judge Seybert and the state court judge before him, had conducted an *in camera* review of Vincent's Academy file, and found no evidence of any conclusion by Academy officials that Vincent had made false accusations. Govt. Br. at GA–3. Judge Seybert, after her review, found that the reports made by Vincent in the matters in question "were never determined to be fallacious or wholly unsubstantiated. At most the conclusions reached [by Academy officials] were equivocal, thus the records would not support cross-examination pursuant to Rule 608(b)." Tr. of June 23, 1999, Hr'g, at 10. The records thus support the independent conclusions of both Judge Seybert and Judge Mishler that permitting the defense to suggest that Vincent had lied to Academy officials would be more prejudicial than probative.[8]

### B. *Psychological Tests*

 Crowley's second claim of improper limitation on cross-examination may be disposed of more quickly. Crowley claims that the trial court erred in preventing

---

**8.** Defense counsel had subpoenaed a broader set of records that might have contained additional material relating to the investigations in question, which were produced to the District Court but apparently not provided to the defense. The record is unclear as to whether Judge Mishler reviewed all of these records as well as Vincent's own files. In an excess of caution, in response to concerns raised at oral argument, this Court has obtained and reviewed those files, and finds nothing in them that warrants a different conclusion. Crowley has not appealed from, and apparently did not object below to, Judge Mishler's decision to review the records in camera and, ulti-

mately, to decline to disclose them to the defense. Thus, no question is before us concerning the merits of Judge Mishler's handling of the subpoena. Nor has any question been raised as to whether the defendants were entitled to discovery of the materials pursuant to any provision of Fed.R.Crim.P. 16 or 18 U.S.C. § 3500. The defense certainly had enough information about the nature and relevance of the files to have raised such issues in the district court and in this Court. We discovered nothing in the files that should have been disclosed to the defense under the rule of *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).

cross-examination of Linda Bulone, the Academy's Medical Administrative Assistant, who testified that Vincent called her on September 28 to report Crowley's assault. The defense sought to examine Bulone concerning a battery of psychological tests that had been administered to Vincent in connection with her clearance for sea duty.

This Court considered the standards for admission of evidence of a witness's psychological condition in *United States v. Sasso*, 59 F.3d 341 (2d Cir.1995). The Court pointed out that while evidence of a witness's psychological history may be relevant to the witness's credibility, courts should carefully weigh the probative value of such evidence, by considering such factors as "the nature of the psychological problem, ... the temporal recency or remoteness of the history, ... and whether the witness suffered from the problem at the time of the events to which she is to testify." *Id.* at 347–48 (internal citations omitted).

Here, there was no basis for concluding that Vincent suffered from any "psychological problem" whatsoever. The impetus for the defense request was an FBI report in which Bulone was reported as having expressed surprise at the extent of the battery of tests demanded of Vincent before being cleared for sea duty. App. at 533–35. Judge Mishler, like Judge Seybert before him, examined Vincent's Academy files, including the results of this psychological testing, and found nothing suggesting any psychological problem reflecting on her credibility. *Id.* at 511; Govt. Br. at GA–3. Their evaluation is confirmed by the fact that after undergoing the test battery referred to, Vincent was cleared for sea duty, which she performed without incident. Moreover, Bulone's reference to the extent of testing, on which the defense relied, reflected not

a concern about Vincent's stability, but rather her sense that the testing was inappropriate and was inconsistent with "established procedures." App. at 534.

*Chnapkova v. Koh*, 985 F.2d 79 (2d Cir. 1993), on which Crowley relies, is entirely distinguishable. There, we held that the trial court abused its discretion in excluding evidence that the witness was "both paranoid and delusional" and suffered from "paranoid schizophrenia." *Id.* at 81. Here, as in *Sasso*, "there was no indication that [Vincent] was delusional or paranoid, or had any difficulties in memory or perception." *Sasso*, 59 F.3d at 348. Our conclusion that Judge Mishler did not abuse his discretion follows *a fortiori* from *Sasso*, since here there is no indication of any adverse psychological condition at all, while the witness there suffered from a diagnosed, if situational and "not-unpredictable," depression. *Id.*

### IV. *Specificity of the Indictment*

As he did in the previous appeal, Crowley argues that the indictment must be dismissed because it fails to specify which particular sexual act defined in 18 U.S.C. § 2246(2) he was accused of attempting to commit. Appellant's Br. at 52–60. More concretely, the indictment, which simply charges in a general way that Crowley committed aggravated sexual assault against Vincent on the day in question, would appear to have permitted the government to argue, as it did, Tr. at 792, that Crowley attempted to commit both forcible oral sex and forcible digital penetration, or indeed to assert any of a variety of other theories, since § 2241(a)(1) quite literally covers a multitude of sins. Crowley argues that the broad wording of the indictment thus permitted him to be convicted by the trial jury based on a finding that he committed a crime that the grand jury had never considered.

In this Court's previous encounter with this case, we held that Crowley waived this issue by failing to raise it in advance of his first trial, as required by Fed.R.Crim.P. 12(b)(2). *Crowley,* 236 F.3d at 108–10. That decision is thus the law of the case. "[W]hen a court has ruled on an issue, that decision should generally be adhered to by that court in subsequent stages in the same case." *United States v. Uccio,* 940 F.2d 753, 758 (2d Cir.1991); *see also Arizona v. California,* 460 U.S. 605, 618, 103 S.Ct. 1382, 75 L.Ed.2d 318 (1983) (same). Crowley argues that the case should come within the exception to this doctrine for "the need to correct a clear error," *Uccio,* 940 F.2d at 758, contending that because his argument was based on Fed.R.Crim.P. 7(c)(1), and not Fed.R.Crim.P. 12(b)(2), the Court was wrong to apply the waiver rule in Rule 12(f).

Crowley is simply wrong, and this Court's prior ruling correct. Rule 12(b)(2) governs the timing of all motions relating to defects in the indictment (other than defects defeating the jurisdiction of the court), including motions claiming violations of Rule 7(c)(1) or of constitutional provisions. *Davis v. United States,* 411 U.S. 233, 236–37, 93 S.Ct. 1577, 36 L.Ed.2d 216 (1973). Moreover, quite apart from the waiver effected by failure to raise the issue before his first trial, Crowley waived the issue *again* by failing to raise it before his *second* trial, after this Court's affirmance of Judge Seybert's new-trial order had returned the case to pre-trial status. Having once again failed to present his argument at a time when "inquiry into an alleged defect may be concluded and, if necessary, cured before the court, the witnesses, and the parties have gone to the burden and expense of a trial," *id.* at 241, 93 S.Ct. 1577, Crowley's effort to re-open the issue before this Court comes with especially little equitable appeal, smacking of precisely the sort of "gamesmanship" the rule aims to prevent, *Crowley,* 236 F.3d at 108.

## V. *Sentence*

Finally, Crowley argues that his sentence of imprisonment, which he concedes was the lowest recommended by the applicable sentencing guidelines, should nevertheless be reversed because the sentencing judge made comments suggesting he was unaware of his authority to depart from the authorized guideline range. Appellant's Br. at 60–66. This claim is without merit.

"[I]t is well established in this Circuit that a court's decision not to depart from the Guidelines is normally not appealable." *United States v. Lainez–Leiva,* 129 F.3d 89, 93 (2d Cir.1997) (quoting *United States v. Brown,* 98 F.3d 690, 692 (2d Cir.1996)) (internal quotation marks omitted). While there is a "narrow" exception to this rule "for those cases in which the sentencing judge mistakenly believes that he or she lacks authority to grant a given departure," *United States v. Clark,* 128 F.3d 122, 124 (2d Cir.1997), we ordinarily presume that a sentencing court "understood all the available sentencing options, including whatever departure authority existed in the circumstances of the case." *United States v. Rivers,* 50 F.3d 1126, 1131 (2d Cir.1995).

Crowley argues that Judge Wexler's remarks at sentencing indicate that he did not understand his authority to grant a departure on the ground that the crime here was outside the heartland of offenses under § 2241(a)(1) for which the relevant guideline, U.S. Sentencing Guidelines § 2A3.1, was designed. Nothing could be farther from the truth. Referring to *Koon v. United States,* 518 U.S. 81, 116 S.Ct. 2035, 135 L.Ed.2d 392 (1996), Judge Wexler expressly stated that "under the

Koon[ ] case I agree that I have a right to downwardly depart if [the offense] is outside of the heartland. This Court declines to downwardly depart. It is my discretion, and I decline." Sentencing Tr. at 43.

■ Crowley argues that this statement was contradicted by the judge's immediately preceding remark that "Congress and the sentencing guidelines in their wisdom have decided that the attempt and the crime itself are equal. I must follow what they say." *Id.* There is no contradiction. The Sentencing Commission, in creating guidelines for aggravated sexual assault, chose not to distinguish between completed forcible sexual acts and attempts, both of which are covered by the relevant statute. A decision to depart simply because the offense was not consummated would thus contravene the Commission's deliberate decision not to make this distinction. *See United States v. Koczuk*, 252 F.3d 91, 98 (2d Cir.2001) (holding that a court may not depart because it disagrees with the placement of an entire category of cases within a particular guideline).

As Judge Wexler correctly recognized, however, nothing in this conclusion precludes a sentencing court from determining, in an appropriate case, that the totality of the circumstances of a particular crime take it outside the normal range of cases for which a particular guideline was designed. Here, Crowley made a strong argument that the nature of the offense, which was an unconsummated attempt at digital penetration, and his arguable voluntary abandonment of the assault, place his crime among the least serious of the wide range of assaults covered by the applicable guideline, and therefore take his offense outside its heartland. But as the Supreme Court recognized in *Koon*, the decision whether the case falls outside the heartland is a particularly fact-sensitive one, which ultimately lies with the sentencing court, which is more familiar with the record than an appellate court and has the capacity for additional fact-finding if necessary. *Koon*, 518 U.S. at 98–99, 116 S.Ct. 2035.

Moreover, even if the sentencing court found that the case might qualify for a heartland departure, the decision to depart is still a discretionary one, on which the sentencing court is permitted to bring to bear all of the facts and considerations that bear on the appropriateness of the particular sentence. A sentencing court is in the best position to judge the appropriateness of a sentencing departure in light of the defendant's overall history and character, his remorse or lack of it, and other factors bearing on the sentence to be imposed. Reasonable people can differ as to whether the conduct in this case merits a sentence of the length mandated by the guidelines. There can be no question, however, that the judge in this case understood his authority to depart and exercised his discretion not to do so. Under those circumstances, this Court has no power to reverse the sentence.

## CONCLUSION

For the reasons stated above, the judgment of the district court is affirmed.