**UNITED STATES of America,**
**Appellee,**

v.

**Sonia LAFONTAINE, aka "Sonia**
**Fromme," Defendant–**
**Appellant,**

**Arthur Kissel, aka "Arthur**
**Fromme," Defendant.**

**No. 02–1232.**

United States Court of Appeals,
Second Circuit.

Feb. 12, 2004.

Julia Pamela Heit and Vivian Shevitz, New York, NY, for Appellant.

Paul B. Radvany, Assistant United States Attorney (James B. Comey, United States Attorney for the Southern District of New York, on the brief; Gary Stein, Assistant United States Attorney, of counsel), New York, NY, for Appellees.

PRESENT: LEVAL, SOTOMAYOR, and WESLEY, Circuit Judges.

## SUMMARY ORDER

Defendant-appellant Sonia LaFontaine appeals from a judgment of conviction and subsequent sentence imposed by the United States District Court for the Southern District of New York (Mukasey, C.J.), following a six-week jury trial. The charges presented at trial all related to insurance fraud and money laundering schemes involving LaFontaine's cosmetic surgery clinic, LaFontaine–Rish Medical Associates ("LRMA"). On appeal, LaFontaine raises various challenges to her conviction and sentence, all of which we find to be without merit.

■ LaFontaine argues that, as part of its plea agreement with Dr. Rish, whereby the government was permitted to introduce Rish's plea allocation as evidence against LaFontaine, the government was obliged to immunize Rish, or otherwise require him to testify at LaFontaine's trial. Because LaFontaine never raised this claim before the district court, we review for plain error, *United States v. Brown*, 352 F.3d 654, 663 (2d Cir.2003); *see also United States v. Crowley*, 318 F.3d 401, 415 (2d Cir.2003) (defining "plain error" as that which is a "clear or obvious deviation

from current law that affected the outcome of the district court proceedings") (internal quotation marks omitted), and find none. Plea allocutions of co-conspirators have routinely been introduced into evidence without the attendant requirement that the pleading co-conspirator testify at another defendant's trial. *See United States v. Petrillo*, 237 F.3d 119 (2d Cir.2000); *United States v. Moskowitz*, 215 F.3d 265 (2d Cir.2000). This is particularly the case where, as here, the pleading co-conspirator has not been granted immunity, and therefore, is free to invoke his Fifth Amendment right not to testify. To the extent that LaFontaine argues that the district court should have compelled Rish's immunization, this claim is unavailing. "Absent extraordinary circumstances, the Due Process Clause imposes no requirement that defense witness immunity be ordered" by the court. *United States v. Diaz*, 176 F.3d 52, 115 (2d Cir.1999) (internal quotation marks and citation omitted). Where, as here, "the witness [himself] is a prosecution target," such extraordinary circumstances do not exist. *United States v. Shandell*, 800 F.2d 322, 324 (2d Cir.1986). Moreover, because LaFontaine did not demonstrate that Dr. Rish's testimony would have been exculpatory or otherwise material to her defense, the district court was under no obligation to compel Rish's immunization.[1]

■ LaFontaine also challenges the district court's decision to exclude dictation tapes, which she claims were "made by doctors who had performed medical procedures on patients named in the indictment," for lack of authentication. Reviewing the district court's exclusion of the

1. We note that, in her brief, LaFontaine argued that the district court should have compelled the government to immunize Drs. Spektor and Zizza in order to permit them to testify at trial. At oral argument, however, LaFontaine conceded that this claim was without merit, as Drs. Zizza and Spektor had not reached agreements with the government at the time of trial.

tapes for abuse of discretion, *United States v. Taubman*, 297 F.3d 161, 164 (2d Cir.2002), we find none. LaFontaine argues that she was unable to authenticate the tapes, as required by Fed.R.Evid. 901(a), because the doctors heard on the tapes were unavailable to testify. The court, however, invited LaFontaine to use alternative means to authenticate the tapes, and she failed to do so. To the extent that LaFontaine argues that the tapes were admissible under Rule 806 for impeachment purposes, such a claim was not raised below, and is now reviewed for plain error. *See Crowley*, 318 F.3d at 414. Because the government did not introduce hearsay statements by the doctors at trial, the challenged tapes could not have been used for impeachment purposes. Further, because LaFontaine has failed to show that introduction of the tapes would have resulted in her acquittal, there was no plain error.

LaFontaine next contends that the district court abused its discretion by excluding certain witness testimony on the ground that it was irrelevant or cumulative. Trial courts enjoy broad discretion over the admission of evidence, and this Court "will second-guess a district court only if there is a clear showing that the court abused its discretion or acted arbitrarily or irrationally." *United States v. Salameh*, 152 F.3d 88, 110 (2d Cir.1998) (internal quotation marks omitted). There is no such showing here. In our view, the excluded testimony of the various prospective witnesses was either irrelevant, cumulative, collateral, or at worst harmless error.

LaFontaine also claims that the district court's refusal to adjourn the trial and authorize the deposition of Arthur Kissel, LaFontaine's husband and co-defendant, constituted an abuse of discretion because it "undermined [her] right to present a balanced defense." The decision to permit or deny leave to conduct a Rule 15 deposition "rests within the sound discretion of the trial court." *United States v. Gigante*, 166 F.3d 75, 81 (2d Cir.1999) (internal quotation marks and citation omitted). There is no indication that the district court's decision constituted an abuse of discretion.

■ LaFontaine also contends that the district court abused its discretion by excluding statements made by Dr. Rish and Kissel to Kristine Haave, the fraud investigator who testified at trial. These statements, LaFontaine maintains, were admissible under Rule 801(d)(2)(E) as statements by a co-conspirator made in furtherance of a conspiracy. Because Rule 801(d)(2)(E), however, requires that the party against whom the statement is offered be a party to the conspiracy, it is clear that such a statement may not be introduced against the government in a criminal case. *See United States v. Abbas*, 74 F.3d 506, 511 (4th Cir.1996); *United States v. Kapp*, 781 F.2d 1008, 1014 (3d Cir.1986). To the extent that LaFontaine argues that the statements were also admissible under Rule 806, this argument was not raised below, and we find no plain error in the district court's ruling. Rule 806 permits the use of such evidence for impeachment purposes; here, however, LaFontaine sought to introduce the statements to prove the truth of the matter asserted—that Kissel and Rish committed the billing fraud. Further, LaFontaine fails to show that she was unduly prejudiced by the exclusion, as the "exculpatory" nature of the statements is not apparent. Thus, these statements were properly excluded.

We reject LaFontaine's claim that the district court abused its discretion by excluding expert testimony that certain medical procedures could be delegated to unli-

censed individuals on the ground that the testimony was irrelevant to the issues presented at trial. For substantially the reasons stated by the district court at trial, the proposed expert testimony was irrelevant to the fraud issues raised at trial and was properly excluded. To the extent that LaFontaine objects to the district court's decision not to charge the jury on the permissibility of delegation to unlicensed individuals under New York law, we also reject her claim. LaFontaine has not shown that the requested charge "accurately represented the law in every respect," and that she was prejudiced by the charge given. *United States v. Mulder,* 273 F.3d 91, 105 (2d Cir.2001). Indeed, the requested charge was an incorrect statement of New York law, and LaFontaine was not prejudiced by the charge given, as the district court properly charged the jury on all of the elements of the government's case. Accordingly, LaFontaine's claim fails.

■ LaFontaine challenges her sentence on a number of grounds. First, she argues that the district court erred in denying her a *Fatico* hearing, thereby precluding her from presenting evidence concerning her role in the offense and the amount of loss for which she was responsible. Reviewing the district court's decision for abuse of discretion, *United States v. Slevin,* 106 F.3d 1086, 1091 (2d Cir.1996) (noting that the district court enjoys broad discretion to determine the procedure by which sentencing issues will be resolved, so long as the defendant is given the opportunity to rebut the government's allegations), we find none. Where, as here, the district court concluded that the defendant had ample opportunity at trial and in her sentencing submissions to rebut the government's allegations concerning role and loss amount, it was under no obligation to hold a *Fatico* hearing.

Second, LaFontaine also contends that the sentencing court improperly calculated the loss involved in the offense. Specifically, LaFontaine claims that the court should have discounted the "intended loss"—the full amount of LaFontaine's fraudulent claims—because LaFontaine knew when the claims were submitted that LRMA would not be reimbursed for the full amount. She further argues that, because the patients received some treatment, the intended loss figure should be discounted to reflect the amount that would have been reimbursed by the insurance companies for the procedures that were actually performed. We find no clear error in the district court's calculation. *United States v. Franklyn,* 157 F.3d 90, 97 (2d Cir.1998). The district court need not compute the loss sustained "with precision," but rather, "need only make a reasonable estimate of the loss, given the available information." *United States v. Jacobs,* 117 F.3d 82, 95 (2d Cir.1997) (quotation marks and citation omitted). For substantially the reasons set forth by the court at sentencing, we agree that the government's loss calculation was a conservative calculation upon which the court could rely in determining the loss amount.

Third, LaFontaine also argues that the district court's upward departure for multiple acts of obstruction of justice was improper, and that the court should have imposed the standard two-level departure mandated by U.S.S.G. § 3C1.1. Although § 3C1.1 provides a two-level enhancement for obstruction of justice, it is well settled that a sentencing court may depart upwardly if a defendant engages in "multiple acts of obstruction" that fall outside the heartland conduct contemplated by § 3C1.1. *United States v. Ventura,* 146 F.3d 91, 97 (2d Cir.1998). Reviewing the sentencing court's decision to depart upwardly for reasonableness, *see* 18 U.S.C.

§ 3742(e)(3)(c), we find that, for substantially the reasons stated by the court at sentencing, the court's six-level enhancement was eminently reasonable given LaFontaine's various and numerous acts of obstruction.

Fourth, LaFontaine further contends that the district court's imposition of a two-level enhancement for conscious or reckless risk of serious bodily injury was an abuse of discretion because the injuries claimed by LRMA patients were "normal complaints of surgical recovery," and the procedures performed by LaFontaine did not pose a risk of serious bodily injury. For substantially the reasons provided by the court at sentencing, we agree that LaFontaine's conduct exposed LRMA patients to "the conscious or reckless risk of serious bodily injury," U.S.S.C. § 2F1.1(b)(4)(A) (1997), and in some cases, actually resulted in injuries to patients. Accordingly, the two-level enhancement was proper.

Fifth, LaFontaine also maintains that the district court's imposition of U.S.S.G. § 3B1.1's leadership role enhancement was improper because she was not a leader or organizer of the conspiracy. She further claims that the sentencing court improperly relied on evidence related to the offense conduct, rather than her role in the offense, in determining whether the role enhancement was applicable. We disagree. The reasons set forth by the court at sentencing clearly indicate that the court properly applied the leadership enhancement.

■ Sixth, LaFontaine further maintains that the sentencing court's decision not to depart downwardly, based on the alleged disparity between her sentence and that of her co-conspirators Drs. Rish and Spektor, was an unconstitutional application of the Sentencing Guidelines. We have established that a disparity in the sentences of co-defendants "is not a proper basis for [a] downward departure," *United States v. Tejeda*, 146 F.3d 84, 87 (2d Cir. 1998) (internal quotation marks omitted), even where the disparity is the result of prosecutorial discretion in the plea bargaining process, *United States v. Stanley*, 928 F.2d 575, 579–82 (2d Cir.1991). As the sentencing court noted, LaFontaine "was in a different position from that of the other defendants," as she profited from the scheme far more than did Drs. Rish and Spektor. Given these considerations, it is clear that the court's decision not to exercise its departure authority was not clearly erroneous.

■ Finally, LaFontaine contends that the sentencing court erred in failing to group the money laundering charges with the fraud charges, as required under the November 2001 Sentencing Guidelines. This claim is completely without merit. The sentencing court correctly applied the November 1997 Sentencing Guidelines, which did not require grouping of the fraud and money laundering charges, but were more favorable to LaFontaine than the November 2001 Sentencing Guidelines. *See United States v. Sabbeth*, 277 F.3d 94, 99 (2d Cir.2002) (requiring that the district court apply the Guidelines version in effect at the time of the offense conduct if it would result in a less severe sentence than the version in force at the time of sentencing). Under the November 1997 Sentencing Guidelines, money laundering and fraud charges are not grouped unless they are tightly interwoven and involve the same victims. *See* U.S.S.G. § 3D1.2(a) (1997). As the sentencing court noted here, the charges were not tightly interwoven and involved two different sets of victims—the insurance companies, and the banking system and society at large. Accordingly, the sentencing court's decision

not to group these charges was appropriate.

For these reasons, the judgment of the district court is AFFIRMED.