**UNITED STATES of America, Appellee,**

v.

**Robert SICIGNANO, Jr., Defendant–Appellant.**

**No. 512, Docket 95–1209.**

United States Court of Appeals, Second Circuit.

Argued Nov. 29, 1995.

Decided March 13, 1996.

William M. Bloss, New Haven, CT (Ira B. Grudberg, Jacobs, Grudberg, Belt & Dow, New Haven, CT, on the brief), for Defendant–Appellant.

Alex V. Hernandez, Assistant United States Attorney, Bridgeport, CT (Christopher F. Droney, United States Attorney for the District of Connecticut, New Haven, CT, on the brief), for Appellee.

Before: McLAUGHLIN and LEVAL, Circuit Judges and KOELTL, District Judge.*

PER CURIAM:

*Background*

The defendant Robert Sicignano, Jr., was charged with one count of distribution of cocaine, under 21 U.S.C. § 841(a)(1), and one count of conspiracy to distribute, under 21 U.S.C. § 846.

The evidence showed the following: The case against Sicignano arose out of a 22–month undercover narcotics investigation in New Haven, Connecticut. During the course of this investigation, undercover agent Raymond Hassett of the New Haven Police Department made a series of cocaine purchases over a period of several months from Nicholas Iovanne, the owner of a bar called the Foundry.

The case against Sicignano consisted solely of evidence of his participation in a single narcotics transaction on January 2, 1992. On that evening, Hassett went to the Foundry with Julie Egan, an undercover agent of the United States Drug Enforcement Administration ("DEA"), to purchase more drugs from Iovanne. Hassett and Egan arranged the purchase with Iovanne and gave him a bag containing $5,000. Iovanne then conferred with the defendant and gave him the bag containing the money to deliver to Butch Monocchi. Monocchi was Iovanne's drug source. The defendant then drove to Monocchi's residence and delivered the bag. Short-

* The Hon. John G. Koeltl, United States District Judge for the Southern District of New York, sitting by designation.

ly thereafter, Mark Misbach, Monocchi's supplier, paid a quick visit to Monocchi. A few minutes later, Sicignano returned briefly to Monocchi's residence. From there he drove back to the Foundry where he was observed placing a taped paper bag under his coat. He then met with Iovanne in a courtyard behind the Foundry and handed him the taped bag, which Iovanne delivered to Hassett and Egan. The bag contained four and one-half ounces of cocaine.

The only overtly disputed issue at trial was whether Sicignano knew (or consciously closed his eyes to the fact) that the bag he delivered to Iovanne contained narcotics. Sicignano testified and admitted carrying a bag from Iovanne to Monocchi and from Monocchi to Iovanne. He denied, however, knowing that narcotics were involved. He testified that he was Iovanne's accountant and that Iovanne asked him to take a bag to Monocchi containing money Iovanne owed to Monocchi. When he did so, Monocchi complained that the money was short. Sicignano left Monocchi's empty-handed but later returned to Monocchi's at Iovanne's request. Monocchi then gave Sicignano a sealed bag which he delivered to Iovanne. Sicignano testified he believed it was the same bag he had originally delivered to Monocchi, containing the incorrect sum of money.

The government argued to the jury that Sicignano either knew the bag contained narcotics, or "consciously avoided learning what was in that package." The Assistant United States Attorney referred to testimony that the bag containing cocaine felt round and lumpy, whereas the bag containing the money was flat and smooth.

The prosecutor and the defendant each submitted proposed charges on conscious avoidance, to inform the jurors they could find the requisite element of knowledge if they found that Sicignano was aware of a high probability that narcotics were involved but consciously avoided learning the truth. Both proposed charges included a proviso that the jurors could not find the knowledge element satisfied by the defendant's conscious avoidance if they found that Sicignano actually believed that the bag did not contain cocaine. However, in charging the jury on conscious avoidance, the trial judge omitted this proviso.[1] Sicignano registered a timely objection before the jury retired to deliberate, but the trial judge declined to instruct further on this issue. The instruction (lacking the proviso) was repeated during jury deliberations in response to the jury's request for repetition of the elements of conspiracy. The defendant moved post-trial to vacate the conviction based on the improper charge. The court denied the motion.

*Discussion*

■ Since 1975, we have repeatedly ruled that, although the jury may be instructed in proper circumstances that knowledge of a criminal fact may be established where the defendant consciously avoided learning the fact while aware of a high probability of its existence, the court must include a proviso advising the jury that it cannot find knowledge of the fact if the defendant actually believed the contrary. *United States v. Feroz,* 848 F.2d 359, 360 (2d Cir.1988)(per curiam); *United States v. Shareef,* 714 F.2d 232, 233 (2d Cir.1983); *United States v. Cano,* 702 F.2d 370, 371 (2d Cir.1983) (per

1. The charge on this issue was as follows:

Under the law, to act "knowingly" is to do an act voluntarily and intentionally and not because of mistake or accident or some other innocent reason. An act is done "willfully" if it is done voluntarily and intentionally and with the intent to do something the law forbids.

You may also find that Robert Sicignano acted knowingly if you find beyond a reasonable doubt that he deliberately ignored or closed his eyes to what otherwise would have been obvious to him. Guilty knowledge may be inferred from the secretive manner in which a transaction is carried out. Thus, you may find that the defendant knew that the purpose of the conspiracy was to possess with the intent to distribute, or actually distribute, a controlled substance, if you find that:

1. the defendant was aware of a high probability that the agreement or understanding entered into among the conspirators, if carried out successfully, would have resulted in the possession with the intent to distribute or the distribution of a controlled substance, and

2. that the defendant acted with deliberate disregard of how such agreement or understanding operated, with a conscious purpose to avoid learning the truth about the subject.

curiam); *United States v. Aulet,* 618 F.2d 182, 190–91 (2d Cir.1980); *United States v. Morales,* 577 F.2d 769, 774 n. 4 (2d Cir.1978); *United States v. Bright,* 517 F.2d 584, 587–88 (2d Cir.1975). Failure to include that proviso improperly permits the jury to convict a defendant who honestly believed that he was not engaging in illegal activity.

The government contends that, because the conscious avoidance charge was given in connection with the elements of conspiracy, we should reverse only the conspiracy conviction and not the conviction on the substantive offense. We disagree.

■ It is highly likely that the jury understood this charge to apply to the issue of knowledge on both counts.[2] Because Sicignano's liability for conspiracy was based on exactly the same evidence as his liability for distribution, the issues for the jury as to the two counts were virtually identical, and the only disputed issue was Sicignano's awareness that narcotics were involved.

The possibility of jury confusion on this issue was reinforced, furthermore, by the government's summation. The prosecutor told the jury that the issue as to the defendant's knowledge was "the same issue in the second count as in the first count. Did he know what he was handling was cocaine? Did he know what he was involved in?" When the prosecutor discussed conscious avoidance, he made no distinction between its application to the conspiracy count as opposed to the distribution count. ("[A]ll of these things when viewed in the light of your common sense tells you that the defendant knew what was in that package. If he says he didn't know, he consciously avoided learning what was in that package.") The prosecutor concluded his argument by asserting, "You can find that the defendant knew that what he was doing was wrong if you find that he consciously avoided learning the truth. The judge will instruct you on the law of conscious avoidance, and I'd ask you to pay particular attention to that charge." This argument was in no way limited to the conspiracy count. Furthermore, like the judge's

charge, it failed to include the necessary balancing proviso.

Under these circumstances, we think it unlikely that the conscious avoidance charge was understood by the jury to apply only to the conspiracy count, and not to the possession count.

■ The government argues that although the omission of the proviso was error, it does not require reversal. It contends that the conscious avoidance charge was sufficiently balanced by the judge's repeated instructions that the defendant must have acted knowingly and willfully and that "to act 'knowingly' is to do an act voluntarily and intentionally and not because of mistake or accident or some other innocent reason." We disagree. An instruction that the jury cannot find knowledge on the basis of mistake or accident is not an acceptable substitute for the balancing charge which incorporates the concept of actual belief. *See Shareef,* 714 F.2d at 234. In addition, no matter how often the jury was instructed that it could not convict unless it found that the defendant acted knowingly, this was undermined by the charge that the jury could find "Sicignano acted knowingly if you find … that he deliberately ignored or closed his eyes to what otherwise would have been obvious to him," without the necessary proviso. Furthermore, the court's entire charge (quoted in footnote 1) on the issue of conscious avoidance was unnecessarily confusing and contained several ambiguities. In our view, the charge taken as a whole created an unacceptable risk that the defendant might be convicted in spite of his actual belief that he was carrying money unrelated to narcotics.

The government points to other cases in which we declined to reverse a conviction despite a deficient conscious avoidance charge. *See Feroz,* 848 F.2d 359; *Shareef,* 714 F.2d at 233–34; *Cano,* 702 F.2d 370. In *Cano* and *Feroz,* however, the defendants had not objected. We therefore reviewed the issue under the "plain error" standard. *Cano,* 702 F.2d at 371; *Feroz,* 848 F.2d at

---

**2.** It also seems clear that the charge was understood by the parties and the judge to define for the jury the way in which it could find knowledge for both counts.

360–61.[3]  Here the issue was preserved by timely objection.  In *Shareef* we held that the error in the conscious avoidance charge was harmless because we found that a properly instructed jury would have convicted the defendant.  *Shareef,* 714 F.2d at 234.  In this case, the government's proof of Sicignano's knowledge was far less convincing.  The evidence was not so overwhelming that it compelled a finding of knowledge.

## Conclusion

The judgment of conviction on both counts is vacated and the case is remanded for retrial.

**3.**  Although we declined to reverse in *Cano* and *Feroz,* we were sufficiently troubled that we instructed prosecutors to request that the balancing language be incorporated into every conscious avoidance charge and took the unusual step of directing the Clerk of the Court to distribute copies of the *Feroz* opinion to all the United States Attorneys in the Second Circuit.  *Cano,* 702 F.2d at 371;  *Feroz,* 848 F.2d at 361.