UNITED STATES of America,
Plaintiff–Appellee,

v.

Harry JAVAHERPOUR, Defendant–
Appellant.

No. 02–5011.

United States Court of Appeals,
Sixth Circuit.

Oct. 9, 2003.

Before: GIBBONS and SUTTON, Circuit Judges; and TARNOW, District Judge.*

OPINION

GIBBONS, Circuit Judge.

A federal jury convicted defendant-appellant Harry Javaherpour of one count of conspiracy to manufacture less than fifty grams of methamphetamine and two counts of distribution of a list I chemical (pseudoephedrine) for use in manufacturing methamphetamine. Javaherpour was sentenced to 151 months in prison and was ordered to forfeit the proceeds from the sale of his Par 4 Market, the location from which Javaherpour distributed pseudoephedrine.

Javaherpour appeals his conviction on the ground that the district court did not properly instruct the jury that Javaherp-our's actual belief that his conduct was lawful constituted a defense. Javaherpour appeals his sentence on the ground that the district court made an improper finding as to the amount of methamphetamine that was attributable to him. Javaherpour also claims that the district court erred in forfeiting funds in his bank account as substitute assets. For the reasons set forth below, we affirm Javaherpour's conviction and sentence.

I.

Harry Javaherpour owned and operated the Par 4 Market in Summitville, Tennessee from late 1999 to May 2001. During this period, Javaherpour repeatedly sold large quantities of pseudoephedrine pills and other items used in the methamphetamine production process at the Par 4 Market.

Many of Javaherpour's former customers testified at trial as to the procedure Javaherpour used to sell pseudoephedrine pills. Customers were able to purchase "flats" of pseudoephedrine—each flat containing 720 pills—from the Par 4 Market. While Javaherpour sold customers two bottles of pseudoephedrine pills at a time at the front counter of the Par 4 Market, he also directed customers to pick up additional bottles at the back of the market. For one customer, Javaherpour "fronted" pseudoephedrine, such that the customer received the pills from Javaherpour and paid for them later. Customers often acquired the other components needed to produce methamphetamine—alcohol, coffee filters, aluminum foil, paper towels and matches—with their purchase of pseudoephedrine pills at the Par 4 Market.

---

* The Honorable Arthur J. Tarnow, United States District Judge for the Eastern District of Michigan, sitting by designation.

In addition to the testimony of Javaherpour's customers, his former employees testified that Javaherpour would set aside large quantities of pseudoephedrine for purchase for expected customers. Javaherpour only accepted cash for the purchase of pseudoephedrine, matches, and other methamphetamine producing items. He frequently rang up the sale of pseudoephedrine pills as phone cards or newspapers. During the period that Javaherpour sold pseudoephedrine at the Par 4 Market, the price of the pills increased from $6 to $15 per bottle.

Javaherpour sold the Par 4 Market in May 2001 to a bona fide purchaser for $415,000. After Javaherpour paid off a $189,000 mortgage on the market, his proceeds from the sale were $226,000, which he placed into his local bank account.

On June 26, 2001, Javaherpour was indicted in the United States District Court for the Eastern District of Tennessee. On December 3, 2001, a jury found Javaherpour guilty of one count of conspiracy to violate 21 U.S.C. § 841(b)(1)(B), that is, to manufacture less than fifty grams of methamphetamine, in violation of 21 U.S.C. § 846. The jury also found Javaherpour guilty of two counts of distribution of a list I chemical (pseudoephedrine) for use in manufacturing, in violation of 21 U.S.C. § 841(c)(2). Javaherpour was sentenced to 151 months in prison and was ordered to forfeit up to $226,000. Javaherpour filed a timely notice of appeal on December 19, 2001.

## II.

■ In charging the jury, the district court gave a deliberate ignorance instruction, which was derived from Sixth Circuit Pattern Jury Instruction 2.09. This instruction stated that if the jury is convinced that

the defendant deliberately ignored a high probability that the purchasers of pseudoephedrine would use it to manufacture methamphetamine, then you may find that he knew the pseudoephedrine would be used to manufacture a controlled substance. But to find this, you must be convinced beyond a reasonable doubt that the defendant was aware of a high probability that the purchasers of pseudoephedrine would use it to manufacture methamphetamine, and the defendant deliberately closed his eyes to what was obvious. Carelessness, or negligence, or foolishness on his part is not the same as knowledge, and is not enough to convict.

In addition, the district court instructed the jury that to find Javaherpour guilty beyond a reasonable doubt, the jury must find that Javaherpour knew, or had reasonable cause to believe, that pseudoephedrine would be used to manufacture methamphetamine. The court defined "reasonable cause to believe" as having "knowledge of facts which, although not amounting to direct knowledge, would cause a reasonable person knowing the same facts to conclude that the pseudoephedrine would be used to manufacture methamphetamine."

Javaherpour argues that because the district court gave the deliberate ignorance instruction, the court also should have included the following instruction in its charge to the jury:

You are instructed that as to the conspiracy and distribution charges, the defendant's actual belief that what he was doing was lawful is a defense in this case. Where knowledge or reasonable belief on the part of the defendant is an element of the offense, as it is in this case, such knowledge or reasonable belief is established if a person is aware of a high probability of its existence, unless he actually believed that what he was doing was lawful.

Relying on *Cheek v. United States,* 498 U.S. 192, 111 S.Ct. 604, 112 L.Ed.2d 617 (1991), Javaherpour contends that the requested instruction is appropriate in light of the intricacies of federal drug laws.[1]

"A district court's refusal to give a specifically requested jury instruction is reviewed for abuse of discretion." *United States v. Alvarez,* 266 F.3d 587, 591 (6th Cir.2001). This court will reverse the judgment of a district court on the basis of a jury instruction when the instruction fails to state the law accurately. *United States v. Moore,* 129 F.3d 873, 876–77 (6th Cir.1999) (citing *United States v. Busacca,* 863 F.2d 433, 435 (6th Cir.1988)). More specifically, a court's refusal to give a requested jury instruction is reversible error "only if that instruction is (1) a correct statement of the law, (2) not substantially covered by the charge actually delivered to the jury, and (3) concerns a point so important in the trial that the failure to give it substantially impairs the defendant's defense." *United States v. Williams,* 952 F.2d 1504, 1512 (6th Cir.1991) (citing *United States v. Parrish,* 736 F.2d 152, 156 (5th Cir.1984)).

Regarding Javaherpour's claim that the requested instruction is warranted in light of the complexities of federal drug laws, a fundamental proposition in American criminal law is that a defendant's mistake of law is not a defense. *Cheek v. United States,* 498 U.S. 192, 199, 111 S.Ct. 604, 112 L.Ed.2d 617 (1991) ("The general rule that ignorance of the law or a mistake of law is no defense to criminal prosecution is deeply rooted in the American legal system."). In certain *circumstances,* however, courts have allowed for mistake of law to be a defense to a crime where the defendant's knowledge of the lawfulness of his conduct is an express element of the offense, including where the defendant has been charged under a "highly technical statute[ ] that present[s] the danger of ensnaring individuals engaged in apparently innocent conduct." *Bryan v. United States,* 524 U.S. 184, 194, 118 S.Ct. 1939, 141 L.Ed.2d 197 (1998).

In this case, Javaherpour's proposed jury instruction requested that the court instruct the jury that Javaherpour's actual belief that his actions were lawful constituted a defense to the crimes charged against him. This instruction is an incorrect statement of the law because the crimes with which Javaherpour was charged—conspiracy to manufacture methamphetamine and distribution of pseudoephedrine—only require proof that Javaherpour acted "knowingly."[2] In a criminal statute, "the term 'knowingly' merely requires proof of knowledge of the

---

1. In arguing that the district court should have given the requested instruction, Javaherpour also relies on a decision of the Second Circuit that has required a proviso, based on the Model Penal Code, "advising the jury that it cannot find knowledge of [a] fact if the defendant actually believed the contrary" to be given in conjunction with the deliberate ignorance instruction. *See United States v. Sicignano,* 78 F.3d 69, 71 (2d Cir.1996). However, Javaherpour's reliance on *Sicignano* is misplaced. Javaherpour's requested instruction did not discuss his knowledge of a particular fact, but rather concerned his belief that his actions were lawful.

2. Javaherpour was charged with conspiracy to manufacture methamphetamine under 21 U.S.C. § 846. Conviction on a conspiracy charge under 21 U.S.C. § 846 requires that the government prove beyond a reasonable doubt that (1) two or more persons conspired, or agreed, to manufacture methamphetamine; and (2) "each conspirator knew of, intended to join and participated in the conspiracy." *United States v. Ward,* 190 F.3d 483, 488 (6th Cir.1999) (quoting *United States v. Elder,* 90 F.3d 1110, 1120 (6th Cir.1996)).

Javaherpour was also charged under 21 U.S.C. § 841(c)(2) with the knowing or intentional distribution of pseudoephedrine knowing, or having reasonable cause to believe,

facts that constitute the offense." *Bryan*, 524 U.S. at 193. As a result, the government was not required to prove that Javaherpour knowingly violated the law, but rather that Javaherpour had knowledge of the facts that gave rise to his violation of the law. Since the government was not required to prove that Javaherpour knew his actions violated the law, the district court's denial of Javaherpour's requested charge to the jury concerning his "actual belief" was not error.

### III.

■ Javaherpour was sentenced under 21 U.S.C. § 841(b)(1)(C), which provides for a statutory maximum sentence of twenty years. The district court found by a preponderance of the evidence, based on witness testimony regarding the sales of pseudoephedrine made by Javaherpour, that the quantity of methamphetamine attributable to Javaherpour was in excess of 1.5 kilograms. Relying on this quantity of methamphetamine, the district court set the total offense level at thirty-four and imposed a sentence of 151 months imprisonment.

Javaherpour argues that, by attributing a quantity of methamphetamine to him that is higher than fifty grams when the jury convicted him of conspiracy to distribute less than fifty grams, the district court violated his due process rights. This court reviews constitutional challenges to sentences *de novo*. *United States v. Lloyd*, 10 F.3d 1197, 1220 (6th Cir.1993).

In *Apprendi v. New Jersey*, the Supreme Court held that due process requires that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi v. New Jersey*, 530 U.S. 466, 490, 120 S.Ct. 2348, 147 L.Ed.2d 435

(2000). Since the Supreme Court's decision, we have addressed the impact of *Apprendi* on a court's determination of drug quantity on numerous occasions. *See, e.g., United States v. Hough*, 276 F.3d 884, 890 (6th Cir.2002) (holding that as "the government proved beyond a reasonable doubt that each defendant possessed the amount of drugs specified by his indictment, and because the district court did not exceed the maximum penalty ... we find no *Apprendi* error in this case"); *United States v. Schulte*, 264 F.3d 656, 660 (6th Cir.2001) (noting that *Apprendi* does not remove the discretion of a district court judge to apply sentencing enhancements, when the sentence imposed does not exceed the statutory maximum).

We have also directly addressed the implications of *Apprendi* when a district court determines a defendant's offense level based on a quantity of drugs in excess of the quantity found by the jury. In *United States v. Solorio*, we affirmed the sentence given by the district court, which was below the statutory maximum, and which was based on a finding that Solorio was responsible for forty-three kilograms of cocaine, when the jury found that he had conspired to possess with intent to distribute less than five kilograms of cocaine. *United States v. Solorio*, 337 F.3d 580, 596–97 (6th Cir.2003).

Since the district court did not sentence Javaherpour to imprisonment in excess of the statutory maximum of twenty years, *Apprendi* does not apply to the sentence given by the district court in this case. The sentence given was within the discretion of the district court and does not violate Javaherpour's due process rights.

### IV.

■ Javaherpour disposed of the Par 4 Market by selling it to a bona fide purchaser in May 2001. He contends that the

---

that pseudoephedrine will be used to manu-     facture methamphetamine.

district court erred in forfeiting funds in his bank account because the money seized did not facilitate the commission of his offenses.

The district court found that the Par 4 Market facilitated the conspiracy in which Javaherpour participated to sell pseudoephedrine and other ingredients needed for the manufacture of methamphetamine. Relying on the facilitation theory of 21 U.S.C. § 853(a)(2), the district court held that Javaherpour's interest in the Par 4 Market was therefore subject to forfeiture. Since Javaherpour sold the market to a bona fide purchaser and no longer maintained any interest in the market, the market itself was not forfeitable.

The district court then considered whether Javaherpour's other assets could be subject to forfeiture. The court found that the right of the United States in the Par 4 Market vested when Javaherpour began to distribute pseudoephedrine illegally from the market. *See* 21 U.S.C. § 853(c) (stating that all right, title, and interest in property subject to forfeiture "vests in the United States upon the commission of the act giving rise to forfeiture"). Accordingly, the district court ordered the forfeiture of $226,000, the amount found by the court to constitute Javaherpour's proceeds from the sale of the Par 4 Market. *See* 21 U.S.C. § 853(p)(2) (stating that when property is subject to forfeiture, but has been sold to a third party, the court shall order the forfeiture of "any other property of the defendant").

This court reviews a district court's interpretation of federal forfeiture laws *de novo. United States v. O'Dell,* 247 F.3d 655, 679 (6th Cir.2001). From the Par 4 Market, Javaherpour sold not only pseudoephedrine but also other components needed to produce methamphetamine. As the location for Javaherpour's sale of these items, the Par 4 Market facilitated his participation in the conspiracy to distribute pseudoephedrine and was subject to forfeiture by the United States. Because the Par 4 Market was sold to a bona fide purchaser in 2001, the district court did not err in ordering the forfeiture of $226,000 by Javaherpour under the substitute assets provision of 21 U.S.C. § 853(p)(2).

## V.

For the foregoing reasons, we affirm the decision of the district court.