09-3524-cr(L)
United States v. Shoreline Motors

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

**SUMMARY ORDER**

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Daniel Patrick Moynihan Courthouse, 500 Pearl Street, in the City of New York, on the 14th day of January, two thousand eleven.

Present:     AMALYA L. KEARSE,
             RALPH K. WINTER,
             PETER W. HALL,
                        *Circuit Judges*.

_____

UNITED STATES OF AMERICA,

        *Appellee*,

                                        Nos.   09-3524-cr (L)
                v.                             09-3531-cr(Con)
                                               09-5064-cr(Con)

SHORELINE MOTORS, ANGEL HERNANDEZ, BRUCE VETRE, JAMES CLANTON, JOSE CONCEPCION, RICHARD DOMINGUEZ, DARIEL PEREZ TORRES, MICHAEL RIVERA,

        *Defendants*,

RICHARD BROWN, NELSON DATIL, DAVID BROWN,

        *Defendants-Appellants*.

_____

For Richard Brown:     MICHAEL S. HILLIS, Dombroski Hillis, LLC, New Haven, Connecticut.

For Nelson Datil:      JONATHAN J. EINHORN, New Haven, Connecticut.

For David Brown:       ROBERT C. MIRTO, Law Offices of Mirto & Rasile, LLC, West Haven, Connecticut.

For the United States:  MICHAEL S. MCGARRY, Assistant United States Attorney (Elizabeth A. Latif, Assistant United States Attorney, *of counsel*), *for* David B. Fein, United States Attorney, District of Connecticut.

_____

Appeal from the United States District Court for the District of Connecticut (Burns, *J.*).

**ON CONSIDERATION WHEREOF**, it is hereby **ORDERED**, **ADJUDGED**, and **DECREED** that the judgments of the District Court be and hereby are **AFFIRMED**.

Defendants-appellants Richard Brown, Nelson Datil, and David Brown appeal from judgments entered by the district court (Burns, *J.*) after a jury trial, convicting all three defendants on one count of conspiracy to commit mail fraud and wire fraud in violation of 18 U.S.C. § 371; convicting each defendant on various counts of wire fraud in violation of 18 U.S.C. §§ 1343, 2(a), and 2(b) (David Brown on six counts, Richard Brown on one count, and Datil on four counts); and convicting Richard Brown and Datil each on one count of mail fraud in violation of 18 U.S.C. §§ 1341, 2(a), and (2)(b).  The charges arose from an automobile-financing fraud scheme carried out at Shoreline Motors Corporation ("Shoreline"), a Mitsubishi car dealership in Branford, Connecticut, at which the defendants were employed.  David Brown and Datil challenge their convictions, and Richard Brown challenges his sentence.  We assume the parties' familiarity with the underlying facts and procedural history of the case.

-2-

I.      Nelson Datil

Datil's sole argument on appeal is that, on rebuttal, the prosecutor impermissibly shifted the burden of proof to him by arguing to the jury that Datil's attorney, during his own rebuttal summation, had not contended that handwriting on certain fraudulent loan application forms was not Datil's. The prosecutor stated during the Government's summation:

> Now, you saw the documents that [the other prosecutor] put in front of you that show that it appears as Mr. Datil's handwriting. And [Datil's counsel] did not deny that it was his handwriting; he simply said [a customer's grandmother] didn't say she saw it, or that [the customer] didn't say she saw him write it. Well, he could have written it at the dealership before he drove up to Hartford.

Tr. of Trial Day 15 at 246. Following the completion of that summation, Datil moved for a mistrial on the ground that the quoted comment violated his rights under the Fifth Amendment. We see no error in the court's denial of the motion.

An accused has a Fifth Amendment right to remain silent during his criminal trial, and the prosecution cannot comment on that silence, *see, e.g., Griffin v. California*, 380 U.S. 609, 615 (1965), or on his failure to present a defense, *see, e.g., United States v. Parker*, 903 F.2d 91, 98-99 (2d Cir. 1990); *United States v. Walker*, 835 F.2d 983, 988 (2d Cir. 1987). Remarks of the prosecutor in summation, however, do not amount to a denial of due process unless they constitute "egregious misconduct." *Donnelly v. DeChristoforo*, 416 U.S. 637, 647 (1974). In order to obtain reversal of a conviction on the ground that the prosecutor has crossed the boundary between permissible and impermissible argument, the defendant must also show that the improper argument caused him substantial prejudice. *See, e.g., United States v. LaMorte*, 950 F.2d 80, 83 (2d Cir. 1991).

In assessing whether the comment complained of meets this test, we consider "the severity of the misconduct, the measures adopted to cure it, and the certainty of conviction in the absence of the misconduct." *United States v. Melendez*, 57 F.3d 238, 241 (2d Cir. 1995); *see, e.g., United States v. Millar*, 79 F.3d 338, 343 (2d Cir. 1996); *United States v. Rivera*, 22 F.3d 430, 437 (2d Cir. 1994). Even where a prosecutor's argument was clearly impermissible, we have been reluctant to reverse where the transgression was isolated, the trial court took swift and clear steps to correct the implication of the argument, and the evidence against the defendant was strong. *See, e.g., United States v. Shareef*, 190 F.3d 71, 79 (2d Cir. 1999); *United States v. Cruz*, 797 F.2d 90, 93 n.1 (2d Cir. 1986) (in light of the record, the argument as a whole, and the curative instructions, prosecutor's statement that "[t]he defense . . . has to convince you," although improper, was held not to require reversal (internal quotation marks omitted)).

In the present case, the trial judge, after hearing Datil's motion for a mistrial, sent the jury home, took the matter under advisement, and addressed the matter at the start of court the next day. The court denied Datil's motion but gave the jury a curative instruction stating:

> Ladies and gentlemen of the jury, as you heard in my initial remarks to you and as you will again hear in my charge to you, during the course of my charge, I will remind you that in a criminal case, the Defendant has no burden to produce or to explain away any evidence. To the extent that the argument of government counsel called upon any defendant to explain away any evidence, such argument was improper, illegal, and should be ignored by you.

The court reiterated such an instruction in its final jury charge, stating that

> [i]n a criminal case, the burden is at all times upon the Government to prove guilt beyond a reasonable doubt. . . . This burden never shifts to the Defendant . . . .

> Defense counsel does not have any obligation to deny or refute any aspect of the Government's case. Nor does the Defendant himself have any burden to deny the Government's arguments or proof, or to produce any evidence whatsoever.

-4-

Therefore, you may not conclude that the Defendant has conceded a point because his counsel did not address it.

The prosecutor's inappropriate comment that Datil's counsel did not deny the handwriting was that of Datil was but a single sentence in the rebuttal summation. Our review of the record persuades us that the evidence against Datil was sufficiently strong that the trial court's excellent curative instructions were ample to prevent any denial of due process.

## II.     David Brown

David Brown raises three challenges to his conviction. First, he argues that the evidence was insufficient to support his conviction on any count. Second, he contends that the district court erred in charging the jury on conscious avoidance. Third, he argues that the district court should have permitted him to call a witness to impeach a key Government witness. We take these issues in turn.

### i.     Sufficiency of the evidence

An appellant arguing that there was insufficient evidence to support a conviction bears "a very heavy burden." *United States v. Crowley*, 318 F.3d 401, 407 (2d Cir. 2003) (internal quotation marks omitted). "[T]he evidence must be viewed in the light most favorable to the Government, with all reasonable inferences drawn in favor of the verdict." *Id.* To prove conspiracy in violation of § 371, the Government must show that (1) an agreement exists between two or more persons to commit an unlawful act; (2) the defendants knowingly engaged in the conspiracy intending to commit those offenses that were the objects of the conspiracy; and (3) one or more of the members of the conspiracy committed an "overt act" in furtherance of the conspiracy. *United States v. Reyes*, 302 F.3d 48, 53 (2d Cir. 2002). To prove mail fraud or wire

fraud, the Government must show (1) a scheme to defraud, (2) to obtain money or property, that is (3) furthered by the use of interstate mail or wires. *United States v. Autuori*, 212 F.3d 105, 115 (2d Cir. 2000). One who "aids, abets, counsels, commands, induces or procures" the commission of a wire-fraud offense, or "willfully causes" such an offense, may be punished as a principal. 21 U.S.C. §§ 2(a), 2(b).

The evidence against David Brown was considerable. Two witnesses testified that he was present at Saturday sales meetings where employees openly discussed a scheme to falsify the income and employment data of potential customers so that Mitsubishi's financing arm, Mitsubishi Motors Credit of America ("MMCA"), would extend credit to individuals it would not have found credit-worthy if given accurate information. Customers who purchased cars through David Brown included, *inter alia*: (1) Wesley Witcher, who stated that although he had told David Brown that his mother was unemployed, the application sent to MMCA stated that Witcher's mother was working for Pratt & Whitney and earning $41,000 per year; he also stated that his own income was listed as $7,000 greater than he had informed David Brown it was; and (2) Andrea Williams, who testified that her income was falsely stated on both her own credit application and one on which she appeared as cosigner. David Brown's customers also testified that he failed to disclose balloon payments and included hidden charges for CD changers and other features, some of which were not provided on the cars.

Bruce Vetre, a cooperating witness and co-conspirator, testified that David Brown instructed him to write down false incomes for customers to show amounts sufficient to qualify for loans. Vetre testified that David Brown told him to write in false employment information for cosigner Marie Bozzuto, and that David Brown sat next to Vetre as Vetre used online

software to send false information to MMCA. Vetre also stated that with respect to Andrea Williams's transaction, David Brown was aware that falsified postal money orders were used to create the appearance that Shoreline had paid off a loan for Williams's old car so that she could qualify for new financing. Furthermore, Vetre testified that David Brown would often leave the income line blank on credit applications so that Vetre could later insert the necessary amount of income.

David Brown's arguments with respect to the sufficiency of the evidence are mostly akin to summation, pointing to minor alleged inconsistencies in the witnesses' testimony and asking us to substitute our evaluation of their credibility for the jury's. This we may not do. *See United States v. James*, 239 F.3d 120, 124 (2d Cir. 2000); *see also United States v. Florez*, 447 F.3d 145, 156 (2d Cir. 2006) (we will not "second-guess a jury's credibility determination on a sufficiency challenge," especially where the defendant "simply repeats facts and arguments already presented to the jury"). Drawing all inferences in the Government's favor, there is ample evidence that David Brown conspired with other Shoreline employees. In addition to the evidence already mentioned, Vetre testified that David Brown was present at a Saturday meeting where the scheme was discussed, and this testimony was corroborated by Jose Concepcion, who stated that all salesmen were present at that meeting. Similarly, Vetre stated that on at least one occasion David Brown specifically instructed him to fill in a figure that would satisfy MMCA's creditworthiness standards. This evidence is sufficient to sustain a conviction on the conspiracy count. With respect to the substantive counts, David Brown's repeated implication that the Government was required to introduce specific evidence showing that David Brown personally prepared each or any fraudulent credit application is without merit. Further, David Brown was

charged with aiding and abetting and causing mail and wire frauds, *see* 18 U.S.C. §§ 2(a) and

(2)(b), and the evidence discussed above easily permitted the jury to find that he had caused and

assisted in such criminal conduct. The evidence allowed the jury to infer that even if David

Brown did not personally falsify information in any given sale, he knew from his participation in

the Saturday sales meetings that other Shoreline employees would do so, literally filling in the

blanks.

     ii.      Conscious avoidance

"We review jury instructions *de novo,* and reverse only when the charge, viewed as a

whole, constitutes prejudicial error." *United States v. Amato*, 540 F.3d 153, 164 (2d Cir. 2008).

A conscious avoidance charge is appropriate when "(a) the element of knowledge is in dispute,

and (b) the evidence would permit a rational juror to conclude beyond a reasonable doubt 'that

the defendant was aware of a high probability of the fact in dispute and consciously avoided

confirming that fact.'" *United States v. Hopkins*, 53 F.3d 533, 542 (2d Cir. 1995) (quoting

*United States v. Rodriguez*, 983 F.2d 455, 458 (2d Cir. 1993)).

In his opening statement, David Brown's counsel argued that the Shoreline scheme may

have existed, but that the question before the jury was whether David Brown was involved. In

his closing statement, he argued that it was the finance department at Shoreline, not David

Brown, a salesman, who committed the fraud. In its jury charge, the district court stated that the

Government was required to prove that David Brown "participated in the scheme to defraud

knowingly, willfully and with specific intent to defraud." The district court added:

> The Government can also meet [its] burden . . . [of] showing that the Defendant had
> knowledge of the falsity of his statements if it in fact showed beyond a reasonable
> doubt that he acted with deliberate disregard of whether the witness[e]s['] statements

were true or false, or with a conscious purpose to avoid learning the truth. If the Government establishes that the Defendant acted with deliberate disregard for the truth, the knowledge requirement would be satisfied unless the Defendant actually believed his statements to be true. This guilty knowledge, however, cannot be established by demonstrating that the Defendant was merely negligent or foolish.

Tr. of Jury Charge at 75-76.

We conclude, first, that the use of a conscious avoidance charge was appropriate. It was David Brown's counsel who put the element of knowledge in dispute by suggesting that he was unaware of any financing scheme. Furthermore, a rational juror could conclude that David Brown was aware of a high probability that the scheme existed, given, *inter alia*, his presence at the Saturday sales meetings and his frequent practice of leaving income information lines blank on credit applications even after customers gave him accurate information.

Second, we conclude that the instruction, although not optimal, was sufficient. In a letter submitted pursuant to Rule 28(j) of the Federal Rules of Appellate Procedure, David Brown calls our attention to our recent decision in *United States v. Kaiser*, 609 F.3d 556 (2d Cir. 2010). In *Kaiser*, we re-emphasized that "a conscious avoidance charge must communicate two points: (1) that a jury may infer knowledge of the existence of a particular fact if the defendant is aware of a high probability of its existence, (2) unless the defendant actually believes that it does not exist." 609 F.3d at 565-66 (internal quotation marks omitted).

We detect no *Kaiser* error here. As quoted above, the district court's charge expressly reminded the jury that the knowledge requirement cannot be satisfied if the defendant actually believes in the truth of his statements. And although the district court did not use the "high probability" language we strongly recommended in *Kaiser*, that language carries no "talismanic weight." *Id.* at 566 (internal quotation marks omitted). Here, the district court made clear that

mere negligence is insufficient to find conscious avoidance, and our concern in *Kaiser* was that "there [was] some risk that the jury could have convicted if it concluded that Kaiser was merely negligent." *Id.* Although the district court's charge in this case differed from the language we strongly encouraged in *Kaiser* — and we strongly recommend that prosecutors request and district courts employ the *Kaiser* language in the future — on the facts of this case we conclude that any deficiency in the charge did not amount to prejudicial error.

David Brown's reply brief suggests the possibility that he misunderstands our cautionary statement that "'[a]n instruction that the jury cannot find knowledge on the basis of mistake or accident is not an acceptable substitute for the balancing charge which incorporates the concept of actual belief.'" *Id.* (quoting *United States v. Sicignano*, 78 F.3d 69, 72 (2d Cir. 1996)). That warning does not mean that the "high probability" language must be used verbatim, nor does it mean that cautioning the jury against mere negligence cannot serve to communicate the requirement of "high probability." Rather, it means that explaining the high-probability requirement is no substitute for a separate explanation that a defendant's actual belief of facts contrary to those allegedly consciously avoided absolves the defendant of responsibility. *Id.* (district court's charge "contained nothing to suggest that actual belief would absolve Kaiser of culpability"). The district court's charge in this case did not commit that mistake, because it did expressly state that actual belief of a contrary proposition (in this case, an affirmative belief on David Brown's part that there was no scheme to defraud at Shoreline) would prevent a finding of conscious avoidance. The central purpose of a conscious avoidance charge, after all, is to hold

those accountable who willfully blind themselves to the wrongful purpose of underlying acts that may be innocent absent that purpose.[1]

### iii. The preclusion of James Jarmon's testimony

On direct examination, Vetre admitted that, in addition to participating in the fraud, he had submitted a false credit application to lease a Lexus for his own personal use. On cross-examination, the following exchange took place:

> [David Brown's counsel]: Was there a time when you wanted to get rid of that vehicle?
> [Vetre]: Yes.
> [David Brown's counsel]: Did you speak to anyone about having it brought to a chop shop?
> [Vetre]: No.

Later, David Brown's counsel sought to call James Jarmon, a former Shoreline salesman, to testify that Vetre had asked people in the dealership whether someone could arrange for Vetre's leased Lexus to be stolen and taken to a chop shop in the Bronx. The Government moved *in limine* to preclude Jarmon's testimony pursuant to Rule 608(b) of the Federal Rules of Evidence[2] as extrinsic evidence on a collateral matter. The district court granted the Government's motion and precluded the testimony.

---

[1] We made this distinction clear in *Kaiser*, in which the district gave a clarifying instruction stating that "'mere presence or mere acquaintance with conspirators' was insufficient, and that conscious avoidance pertained only to 'the objects of the conspiracy or the substantive crime.'" 609 F.3d at 565.

[2] "Specific instances of the conduct of a witness, for the purpose of attacking or supporting the witness' character for truthfulness, other than conviction of crime as provided in Rule 609, may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness (1) concerning the witness' character for truthfulness or untruthfulness, or (2) concerning the character for truthfulness or untruthfulness of another witness as to which character the witness being cross-examined has testified."

We review for abuse of discretion a district court's decision to preclude evidence offered to impeach a witness. *See United States v. Ramirez*, 609 F.3d 495, 499 (2d Cir. 2010). We discern no abuse of discretion in the district court's application of Rule 608(b), which prohibits the use of extrinsic evidence of specific instances to attack a witness' character for truthfulness. In his brief, David Brown admits that his purpose in introducing Jarmon's testimony would have been to impeach Vetre. Although David Brown argues that the court's ruling allowed Vetre to "perjure himself without any consequences," D. Brown Br. at 28, we have recognized that cross-examination is generally the proper mechanism by which to test an adverse witness's credibility, and the use of extrinsic evidence to further pursue questions posed on cross-examination is generally not permitted. *See United States v. Masino*, 275 F.2d 129, 133 (2d Cir. 1960) ("When a witness is cross-examined for the purpose of destroying his credibility by proof of specific acts of misconduct not the subject of a conviction, the examiner must be content with the answer. The examiner may not, over objection, produce independent proof to show the falsity of such an answer."); *see also United States v. Castillo*, 181 F.3d 1129, 1133 (9th Cir. 1999).

Even if, in an appropriate case, we ought to allow cross-examination testimony to be impeached by extrinsic contradiction, it is unnecessary to announce any such rule today, because any error was harmless. "Error is harmless if it is highly probable that it did not contribute to the verdict." *United States v. Gomez*, 617 F.3d 88, 95 (2d Cir. 2010) (internal quotation marks omitted). Any impeachment of Vetre based on Jarmon's testimony would have been of very minor significance, given that Vetre had already admitted to participating in the Shoreline fraud and to fraudulently leasing the Lexus in the first place. We think it is highly probable that the jury's verdict would have been unchanged by Jarmon's testimony.

-12-

Finding no merit in any of David Brown's arguments, we affirm his conviction.

III.     Richard Brown

We review sentences for reasonableness, which is "akin to review for abuse of discretion." *United States v. Fernandez*, 443 F.3d 19, 27 (2d Cir. 2006).  Reasonableness has both procedural and substantive components.  *See United States v. Avello-Alvarez*, 430 F.3d 543, 545 (2d Cir. 2005).  A district court commits procedural error if it fails to calculate the Guidelines range (unless omission of the calculation is justified), errs in its Guidelines calculation, treats the Guidelines as mandatory, does not consider the factors set forth in 18 U.S.C. § 3553(a), rests its sentence on a clearly erroneous factual determination, or fails to adequately explain its chosen sentence (including any deviation from the Guidelines range).  *See United States v. Cavera*, 550 F.3d 180, 190 (2d Cir. 2008) (en banc).  In reviewing sentences for substantive reasonableness, we apply a "deferential abuse-of-discretion standard," and will set aside the district court's sentence "only in exceptional cases where [its] decision cannot be located within the range of permissible decisions." *Id.* at 189 (internal quotation marks omitted).

The district court sentenced Richard Brown principally to 60 months, well below the bottom of the 92 to 115 months recommended by the Guidelines.  Richard Brown argues that: (1) the district court failed to address his argument that he had a minor role in the offense; (2) it failed to adequately analyze the 18 U.S.C. § 3553(a) factors; and (3) it failed to consider the disparities between his sentence and that of his co-defendants.  We find none of these contentions persuasive.

First, the transcript of the sentencing hearing reflects that the district court considered, and rejected, Richard Brown's assertion that his role in the offense was minor.  After listening to

-13-

a presentation by counsel about offense role, the district court observed that the record indicated that, in at least one instance, Richard Brown had personally filed a false credit application, and asked the defense to respond. The defense's only response was a blunt denial of responsibility by Richard Brown himself, which the district court understandably did not find persuasive. We thus reject the suggestion that the district court failed to address the defense's arguments regarding role.

We also disagree with Richard Brown's contention that the district court failed to give adequate attention to the 18 U.S.C. § 3553(a) factors or provided insufficient reasoning for its sentence. A district court need not "expressly parse or address every argument relating to those factors that the defendant advanced," and we entertain "a strong presumption that the sentencing judge has considered all arguments properly presented to her, unless the record clearly suggests otherwise." *Fernandez*, 443 F.3d at 29-30. No "robotic incantation" is needed to prove that consideration of all of the § 3553(a) factors occurred. *Id.* at 30 (quoting *United States v. Crosby*, 397 F.3d 103, 113 (2d Cir. 2005)).

The district court noted that the Guidelines range for Richard Brown was "largely driven . . . by Mr. Brown's criminal history." Tr. of R. Brown Sent. at 28. The court nevertheless imposed a below-Guidelines sentence of 60 months and stated that the sentence was based on "the trial that I sat through, my knowledge of the case, and Mr. Brown's participation in this conspiracy." *Id.* It is distinctly the role of the district court to determine what weight is to be afforded to each § 3553(a) factor, and we consider only "whether a factor relied on by a sentencing court can bear the weight assigned to it." *Cavera*, 550 F.3d at 191. The district court's statements at sentencing demonstrate that it considered Richard Brown's lengthy criminal

-14-

history and recidivism as especially significant factors in fashioning an appropriate sentence. Especially given the substantially below-Guidelines sentence imposed, we cannot see any basis for stating that the district court attached undue weight to this particular factor.

For much the same reasons, we do not agree that the district court failed to consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6). Richard Brown's co-defendants were in lower Criminal History Categories — Category III in the case of Datil,[3] and Category II in the case of David Brown. Richard Brown also complains that he received the same sentence as another co-defendant, Angel Hernandez, despite Hernandez's conviction additional counts and significantly greater role in the offenses. But Hernandez's criminal history was Category I, in contrast to Richard Brown's Category V. The district court, again, made clear that Richard Brown's persistent recidivism was the predominant factor at his sentencing. There is accordingly no basis for us to conclude that any sentence disparity was *unwarranted*. *See Fernandez*, 443 F.3d at 28 ("[A] disparity between *non-similarly situated* co-defendants is not a valid basis for a claim of error under 18 U.S.C. § 3553(a)(6).") (emphasis in original). We thus affirm Richard Brown's sentence.

---

[3] The district court sentenced Datil to a single day in prison (plus three years of supervised release, with the first six months to be served in a halfway house), but did so in part because, in findings that were almost exactly the opposite of its findings regarding the lack of deterrent effect that Richard Brown's prior convictions had on Brown, it concluded that Datil "has been sufficiently shocked and disturbed by this prosecution, to be deterred from any further conduct of that kind." Tr. of Datil Sent. at 52.

IV.    Conclusion

We have considered all of the appellants' other arguments and find them to be without

merit.  Accordingly, we **AFFIRM** the judgment of the district court with respect to each

appellant.

FOR THE COURT:
CATHERINE O'HAGAN WOLFE, CLERK