STRAUB, Circuit Judge,
dissenting in part, concurring in part:
With today’s decision the majority blurs the once distinct and enforced parameters of our conscious avoidance jurisprudence. The Quinoneses raised two issues regarding the conscious avoidance jury instruction on appeal: (1) whether it should have been included in the jury charge at all and (2) whether its language violated our precedent, including, most recently, United *601 States v. Kaiser, 609 F.3d 556 (2d Cir.2010) because it did not account for their actual beliefs. While I agree that because the Quinoneses asserted “the lack of some specific aspect of knowledge required for conviction, and ... the appropriate factual predicate for the charge exist[ed],” United States v. Ferrarini, 219 F.3d 145, 154 (2d Cir.2000), cert. denied, 532 U.S. 1037, 121 S.Ct. 1997, 1998, 149 L.Ed.2d 1001 (2001), the instruction was properly before the jury, I disagree with the majority’s conclusion that the error found in the instruction’s language was harmless. Because it is my opinion that the conscious avoidance instruction was fundamentally flawed and that the error was plain and prejudicial, I respectfully dissent and would vacate the judgment against the Quinoneses and grant them a new trial. Indeed, I suggest that Kaiser allows for no alternative. I concur in the majority opinion in all other respects.[1]
I. Doctrine of Conscious Avoidance
The doctrine of conscious avoidance stands for the principle “that a person who deliberately shuts his eyes to an obvious means of knowledge has sufficient mens rea for an offense based on such words as ‘permitting,’ ‘allowing,’ ‘suffering’ and ‘knowingly.’”[2] Edwards, J. LL. J., The Criminal Degrees of Knowledge, 17 Mod. L.Rev. 294, 298 (1954). In our Circuit, “a conscious avoidance charge must communicate two points: (1) that a jury may infer knowledge of the existence of a particular fact if the defendant is aware of a high probability of its existence, (2) unless the defendant actually believes that it does not exist.” Kaiser, 609 F.3d at 565-66 (internal quotation omitted). While other circuits rarely have authorized the use of the instruction, see, e.g., United States v. Alvarado, 838 F.2d 311, 314 (9th Cir.), cert. denied, 487 U.S. 1222, 108 S.Ct. 2880, 101 L.Ed.2d 915 (1988), we have authorized it “somewhat more readily,” United States v. Rodriguez, 983 F.2d 455, 457 (2d Cir.1993).
Since adopting the conscious avoidance doctrine from English common law, American courts have balanced its application with a concern for defendants’ actual beliefs. In Spurr v. United States, 174 U.S. 728, 19 S.Ct. 812, 43 L.Ed. 1150 (1899), the Supreme Court first tacitly acknowledged the doctrine’s legitimacy, but also recognized the improper usage of the conscious avoidance instruction deprived the defendant of his defense of honest belief. Spurr, 174 U.S. at 738-39, 19 S.Ct. 812. Later, this concern for defendants’ actual beliefs was incorporated into the Model Penal Code’s directive on conscious avoidance: “When knowledge of the existence of a particular fact is an element of an offense, such knowledge is established if a person is aware of a high probability of its existence, unless he actually believes that it does not exist.” Model Penal Code § 2.02(7) (1962). The Supreme Court expressed its approval of this formulation in Leary v. United States, 395 U.S. 6, 46 n. 93, 89 S.Ct. 1532, 23 L.Ed.2d 57 (1969), and we require substantially similar language for a proper conscious avoidance jury instruction in our Circuit. See, e.g., United States v. Feroz, 848 F.2d 359, 360 (1988) (per curiam). District courts and prosecutors have been on notice for over three decades that the “actual belief’ lan *602 guage must be “incorporated into every conscious avoidance charge.” Feroz, 848 F.2d at 361; see also United States v. Sicignano, 78 F.3d 69, 71 (2d Cir.1996) (per curiam).
The “actual belief’ prong is critical to ensure a proper conscious avoidance jury instruction. The risk of the language’s exclusion is dire because “[fjailure to include that proviso improperly permits the jury to convict a defendant who honestly believed that he was not engaging in illegal activity.” Sicignano, 78 F.3d at 72. Moreover, as the proviso goes to what a defendant believes, and not what he knows or should know, the belief held by the defendant need not be reasonable in order for it to defeat a conscious avoidance theory of actual knowledge. See United States v. Catano-Alzate, 62 F.3d 41, 43 (2d Cir.1995) (per curiam) (“[T]he doctrine of conscious avoidance does not permit a finding of guilty knowledge if the defendant actually did not believe that he or she was involved in.the transportation of drugs, however irrational that belief may have been.”). In eases like this one, where a defendant relies on his lack of knowledge of a crucial fact as a central element of his defense, the “actual belief’ language is “particularly appropriate.” United States v. Morales, 577 F.2d 769, 773-74 (2d Cir.1978) (citing United States v. Bright, 517 F.2d 584 (2d Cir.1975)).
II. The Error in the Conscious Avoidance Jury Instruction Was Not Harmless
A. Standard of Review
Because the Quinoneses did not specifically object to the language of the conscious avoidance jury instruction, we review for plain error. Fed.R.CrimP. 30(d). Under this standard, the Quinoneses must demonstrate that any error “(1) is clear or obvious, rather than subject to reasonable dispute; (2) affected [their] substantial rights — i.e., that there is a reasonable probability that the error affected the outcome of the trial; and (3) seriously affects the fairness, integrity or public reputation of judicial proceedings.” Kaiser, 609 F.3d at 565 (quoting United States v. Marcus, — U.S. —, 130 S.Ct. 2159, 2164, 176 L.Ed.2d 1012 (2010) (internal quotation marks and alterations omitted)).
B. The Conscious Avoidance Charge was Fundamentally Flawed
The conscious avoidance instruction in this case, much like the one we found deficient in Kaiser, “contained nothing to suggest that actual belief would absolve [the Quinoneses] of culpability.” Kaiser, 609 F.3d at 566. The District Court charged the jury:
In determining what the defendant knew or reasonably should have known, you may consider whether the defendant deliberately closed his eyes to what otherwise would have been obvious. This does not mean that the defendant acted carelessly, negligently or even foolishly. One may not, however, avoid criminal liability by wilfully and intentionally remaining ignorant of a fact material and important to his or her conduct. Thus, even if you find beyond a reasonable doubt that the defendant was aware that there was a high probability that the doctors and pharmacists were acting outside the usual course of professional practice and not for a legitimate medical purpose, but deliberately and consciously avoided learning this fact, then you may treat this deliberate avoidance of knowledge as the equivalent of knowledge.
This instruction is completely silent on the Quinoneses’ actual beliefs, and thus it is wholly deficient and clearly erroneous.
*603 The majority contends that the instruction above is distinguishable from the one found in Kaiser because here it was presented as an alternative means of proving “what defendant[]s knew or reasonably should have known,” Maj. Op. at 595, as opposed to only what the defendant knew, as was the ease in Kaiser. This argument renders irrelevant the conscious avoidance instruction in this case. The instruction was presented as an alternative means for the jury to find the knowledge element of the charged offenses, and therefore may well have been the basis by which the jury found the Quinoneses guilty, particularly in its flawed state. The majority is wrong that “the defendants’ actual but unreasonable belief in the existence of a fact — here, the doctors’ and pharmacists’ good faith— could not absolve the defendants of culpability.” Id. Our conscious avoidance cases say the opposite: If the jury found that the Quinoneses actually believed that the doctors and pharmacists were acting in good faith, it could not have convicted them under the doctrine of conscious avoidance. Kaiser, 609 F.3d at 566; Sicignano, 78 F.3d at 72. Because the jury was not presented with the “actual belief’ proviso, however, it had almost no alternative but to find the Quinoneses guilty when it combined the flawed conscious avoidance instruction with the should have known knowledge element.
Because the conscious avoidance instruction “was presented as an alternative basis on which the jury could find knowledge[,].... it is possible that the jury could have convicted [the Quinoneses] even if it concluded [they] had an actual belief’ that the doctors and pharmacists were acting in good faith. Kaiser, 609 F.3d at 566. Indeed, I am convinced that there is “a reasonable probability that the jury convicted [the Quinoneses] on a conscious avoidance theory and that the jury would not have done so but for the instructional error.” Id. at 567. Thus, the error “seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings,” Marcus, 130 S.Ct. at 2164, and by the same rationale we offered in Kaiser, the Quinoneses should be entitled to a new trial.
C. Overwhelming Evidence of Knowledge and the Quinoneses’ Actual Beliefs
Putting aside its attempt to distinguish Kaiser, the majority opinion holds that even if the instruction was improperly worded, the error was non-prejudicial and, thus, harmless because (1) the government presented overwhelming evidence that the Quinoneses actually knew or should have known that the doctors and pharmacists were acting in bad faith and (2) the Quinoneses’ actual beliefs were unreasonable and consequently would not absolve their crimes. I find the majority’s first rationale unpersuasive and I believe the second misapplies the law.
The majority’s opinion rests on its finding that there was overwhelming evidence of “actual knowledge.” See Kaiser, 609 F.3d at 566-67. Upon completing the harmless error inquiry, which extends to “the record as a whole,” United States v. Onumonu, 967 F.2d 782, 789 (2d Cir.1992), and without drawing inferences in the government’s favor, see generally United States v. Mejia, 545 F.3d 179, 199 n. 5 (2d Cir.2008), I come to the opposite conclusion. The evidence tends to indicate that the Quinoneses honestly believed their business was legal; it is certainly not “essentially uncontroverted” that they knew the practitioners were acting in bad faith. Kaiser, 609 F.3d at 567 (citing United States v. Cotton, 535 U.S. 625, 633, 122 S.Ct. 1781, 152 L.Ed.2d 860 (2002)). Moreover, when considering whether there was overwhelming evidence that they *604 should have known, we must account for the jury instruction that the Quinoneses were “entitled to reasonably rely on the determinations of doctors and pharmacists.”
The Quinoneses’ defense, like that of the defendants in Kaiser, 609 F.3d at 561, and Sicignano, 78 F.3d at 71, was predicated on their lack of knowledge of a key fact— in this case, that the doctors and pharmacists involved in their internet pharmacy operation were acting outside the usual course of professional practice. The jury heard ample testimony from Antonio on the steps he took to ensure that his business was legal and on his actual belief that the doctors and pharmacists were operating in good faith. He consulted with an attorney, who visited the pharmacy, reviewed the business in operation, checked the prescriptions, and concluded that the business was legal. He also spoke with at least one doctor in Puerto Rico to ensure that the doctors were licensed and the internet pharmacies in compliance with the law. He paid an additional attorney to x-eseax'ch and explain a telemedicine law enacted in Puerto Rico that he believed allowed him to operate his internet pharmacies legally. Furthermore, as the majority discussed, Antonio moved his business out of Florida when a new law was enacted prohibiting Florida doctors from writing prescriptions without face-to-face consultations. He also maintained a “block list” to prevent drug abusing customers from repeatedly purchasing pills. This evidence, along with Antonio’s uncontroverted testimony that he honestly believed that his business was in compliance with the law would allow a rational juror to conclude (1) that the Quinoneses actually believed that the doctors and pharmacists were operating in good faith and (2) that they did not have actual knowledge to the contrary.
Considering the facts before us, including the evidence tallied in the majority opinion, I do not believe that the evidence of “actual knowledge” in the Quinoneses’ case was “overwhelming” when compared to the evidence of “actual belief,” nor indeed any stronger than the evidence presented in Kaiser. In Kaiser, the government put forth evidence that the defendant manipulated payments to his employer in order to convince auditors that vendors were paying down their outstanding account balances. Kaiser, 609 F.3d at 562. Government witnesses testified that the defendant developed a scheme to show inflated profits and income for his employer and lied to auditors. Id. at 562-63. The government introduced direct evidence of the alleged scheme, including a co-conspirator’s notes from conversations with the defendant as well as letters allegedly signed by him. Id. at 567, 574. We determined that this evidence was not “overwhelming” in the face of the defendant’s testimony that he was taking orders from others and that he believed his actions were legal. Id at 566-67. We also credited the defendant’s argument that because most of the inculpatory testimony came from cooperating witnesses, it may have been unreliable. Id In the Quinoneses’ case, likewise, the jury heard from Antonio himself as to his reliance upon the doctors and pharmacists, and many of the other witnesses testifying were government cooperators.
The majority claims that this case is different from Kaiser, insofar as the Quinoneses would still have been convicted if they reasonably should have known that the doctors and pharmacists were acting in bad faith. The majority contends that there was overwhelming evidence that they should have known this fact. This reasoning ignores the good-faith reliance instruction included in the jury charge. The District Court’s statement on “good *605 faith” immediately preceded the conscious avoidance instruction:
The defendant is entitled to reasonably rely on the determinations of doctors and pharmacists. This means that even if you find that the doctors and pharmacists who allegedly wrote and filled the prescriptions at issue in this case were not, in fact, acting in good faith, as I previously defined the phrase of good faith to you, you must find the defendant not guilty unless the government proves beyond a reasonable doubt that the defendant knew or reasonably should have known that the doctors and pharmacists were not acting in good faith and if you find that to be the case, then the defendants will be guilty.
Accounting for this instruction, the government needed to prove that after speaking with doctors, who assured him that the drugs were being prescribed in good faith, Antonio nonetheless should have known that these doctors were not telling the truth.
Just as with “actual knowledge,” I do not think that the evidence before our Court allows for a finding that there was overwhelming evidence that the Quinoneses should have known the practitioners were acting in bad faith. As the record contains conflicting testimony as to what the Quinoneses knew and believed, as well as clear evidence that Antonio consulted with both the doctors as well as attorneys about whether his business was legal, a jury should determine whether the Quinoneses are guilty after hearing a proper jury charge. See generally United States v. Payne, 591 F.3d 46, 60 (2d Cir.), cert. denied, — U.S. —, 131 S.Ct. 74, 178 L.Ed.2d 246 (2010) (“Where there are conflicts in the testimony, we must defer to the jury’s resolution of the weight of the evidence and the credibility of the witnesses.” (internal alterations and quotation marks omitted)). Again, as the conscious avoidance jury instruction was employed as an alternative means of proving the Quinoneses’ knowledge, it is possible that the juxtaposition of the good faith and conscious avoidance instructions left the jury confused as to the proper standard. The jurors may have thought they had little choice but to convict the Quinoneses considering the interplay between the reasonably should have known standard and the flawed conscious avoidance language. It is unclear from the record whether the jury convicted the Quinoneses under an actual knowledge or a conscious avoidance theory. “[N]o matter how often the jury was instructed that it could not convict unless it found that the defendant acted knowingly, this was undermined by the charge that the jury could find ‘[the Quinoneses] acted knowingly if you find that [they] deliberately ... closed [their] eyes to what otherwise would have been obvious to [them],’ without the necessary [actual belief] proviso.” Sicignano, 78 F.3d at 72 (internal alterations omitted).
Whether the Quinoneses’ beliefs were reasonable does not change our analysis. See United States v. Catano-Alzate, 62 F.3d 41, 43 (2d Cir.1995) (per curiam). If the jury intended to convict the Quinoneses under the conscious avoidance doctrine, but found that they actually believed that the doctors and pharmacists were operating in good faith, then it would have been required, using the correct standard, to acquit, regardless of whether it found the Quinoneses’ beliefs were reasonable. While it is true that the jury would still be free to convict the Quinoneses under the “reasonably should have known” standard found in the jury instructions, I think there is “a reasonable probability that the jury convicted [the Quinoneses] on a conscious avoidance theory and that the jury would not have done so but for the instructional error.” Kaiser, 609 F.3d at 567. *606 Thus, the jury instructions were fundamentally flawed and the error was not harmless.
CONCLUSION
In sum, I fear that today’s opinion seriously undermines the distinct and enforced parameters of our previous conscious avoidance jurisprudence and will leave prosecutors to conclude that the precision heretofore expected is no longer necessary. The jury instructions in this case were fundamentally flawed because they lacked the “actual belief’ proviso that we require in all conscious avoidance instructions presented to a jury. As a result, I respectfully dissent and conclude that the language of the conscious avoidance jury instruction was plain error. I would vacate Antonio and Herman Quinones’s convictions and remand the case for further proceedings as appropriate, including a new trial.

. By Summary Order, filed today, the majority affirms various other rulings made by the District Court. As I conclude that a new trial is necessary, I choose not to opine on those issues at this time.

. In various American and English cases, the doctrine is also referred to as willful blindness, deliberate ignorance, connivance, and the deliberate closing of one’s eyes. See Edwards, The Criminal Degrees of Knowledge, supra, at 302.